## TERRITORY *v.* GEORGE A. BRALY.

## No. 1644.

### EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT. HON. F. ANDRADE, JUDGE.

ARGUED MARCH 3, 1926.                    DECIDED MARCH 8, 1926.

### PERRY, C. J., LINDSAY AND BANKS, JJ.

STATUTES—*reapportionment of legislators.*

Section 4119, R. L. H. 1925, defining manslaughter, having been enacted by the legislature of the Kingdom of Hawaii in 1860 and having remained in force ever since, is in no way affected by failure to reapportion the members of the legislature as directed by section 55 of the Organic Act.

GRAND JURIES—*qualifications of.*

When the members of a grand jury are otherwise qualified by law to discharge their duties they are not rendered incompetent by the honest omission of the jury commissioners to apportion the list of persons drawn to serve as jurors among the different precincts of the county.

HOMICIDE—*manslaughter—separation into degrees.*

A statute which defines manslaughter in general terms is not void because the legislature does not separate the crime into degrees.

SAME—*definition of offense.*

Section 4119, R. L. H. 1925, defining manslaughter, is sufficiently definite to meet the requirements of the fifth and sixth amendments to the Federal Constitution.

SAME—*malice.*

Section 4121, R. L. H. 1925, which authorizes a conviction of assault and battery under an indictment charging manslaughter, does not by implication make malice an ingredient of manslaughter.

There is no legal distinction between malice and malice aforethought.

### OPINION OF THE COURT BY BANKS, J.

This is an interlocutory bill of exceptions. On the 22d day of April, 1925, the defendant George A. Braly was indicted by the grand jury of the first judicial circuit, Territory of Hawaii, for the crime of manslaughter. Subsequent to his arraignment the defendant filed a plea in abatement by which he sought to have the indictment quashed. In his plea he challenged the validity of the indictment on several grounds. The first ground relates to the legality of the grand jury which returned the indictment. The second is, "That there is no valid law defining the offense of manslaughter." The third and fourth grounds challenge the validity of the territorial statute defining manslaughter for the alleged reason that the territorial legislature which enacted the statute was not legally constituted. The Territory demurred to the plea in abatement assigning several reasons why it was insufficient in law. The demurrer was sustained. The defendant thereafter filed a motion to quash the indictment on twenty-six grounds. The motion to quash raises all the questions presented by the plea in abatement and several additional ones. The motion to quash was overruled. Thereupon the defendant filed a demurrer to the indictment in which its sufficiency was questioned for the same reasons given in the motion to quash. The demurrer was overruled. The defendant reserved exceptions to the rulings of the court below on the plea in abatement, the motion to quash and the demurrer. He then prayed and was allowed an interlocutory bill of exceptions.

The first questions to be considered are those presented

by the plea in abatement and the demurrer thereto. It is averred, in substance, in paragraph one of the plea that none of the grand jurors who returned the indictment was legally qualified to act in that capacity, for the reason that the jury commissioners in making up the grand jury list did not make their selection from the citizens, voters and residents of the several precincts in the first judicial district as near as may be according to and in proportion with the respective number of registered voters last registered in each of said precincts. The defendant thus seeks to discredit the indictment because the jury commissioners in selecting the grand jury did not conform to the requirements of the statute in that regard. The pertinent portions of the statute (Sec. 2402, R. L. H. 1925) provide as follows: "Duty to make list, etc. The jury commission of each circuit shall, before the fifteenth day of December in each year, or at any subsequent time, if omitted or neglected before such day, make two lists of persons to serve respectively as grand and trial jurors in the circuit court for the ensuing year. It shall proceed to select and list from the citizens, voters and residents of the several precincts in the circuit, as near as may be according to and in proportion with the respective number of registered voters last registered in each of the precincts, the names of one hundred persons who, in its opinion, are qualified to serve as trial jurors, and the names of fifty persons who are qualified to serve as grand jurors under the provisions of this chapter; provided that the number of persons so selected and listed, as aforesaid, shall be one thousand as trial jurors and seventy-five as grand jurors in the first circuit."

The quoted portion of the statute was evidently enacted for the benefit of those persons who are subject to jury duty. In order that the burdens of this public service might be equitably distributed the commissioners were

directed to make their selections as nearly as may be proportionately to the number of voters and citizens in the different precincts. It manifestly was not the purpose of the legislature to make the statute so mandatory that a failure to meticulously observe its provisions would disqualify every one selected to serve as a juror and there is no denial by the defendant that the grand jurors who returned the indictment against him were otherwise fully qualified to do so. Moreover the statute by its very terms vests in the commission a wide discretion in making its apportionment of jurors. The commission is directed to make the apportionment "as near as may be" among the different precincts. This, of course, means that after a survey of the entire field from which jurors may be chosen and a consideration of the registered voters in the different precincts, the commission shall so apportion its selection of jurors as will in their judgment equitably distribute the burden of jury service. So long as this discretion, with which the commission is clothed, is not abused but is honestly and fairly exercised no one has any ground of complaint.

The next question which we will consider is that presented by paragraphs three and four of the plea in abatement. In these paragraphs the defendant attacks the validity of section 4119, R. L. H. 1925, which defines manslaughter, on the ground that the legislature which enacted the statute was an illegal body and therefore without power to function in that capacity. The contention is that section 55 of the Organic Act requires a reapportionment of the members of the legislature and that this reapportionment has never been made. The conclusion is drawn that because of this omission the legislature was without legal authority to enact the statute in question. Without deciding the effect on legislative enactments of a failure to reapportion the members of

the legislature as provided by section 55 of the Organic Act, the contention of the defendant is completely answered by the fact that in 1860, long before the Hawaiian Islands were annexed to the United States, the legislature of the Kingdom of Hawaii passed a statute defining the crime of manslaughter in the same language as that employed in section 4119, R. L. H. 1925. This statute was the law in Hawaii when the Organic Act was enacted and by the terms of that Act the laws of Hawaii then existing were expressly continued in force. Section 6 of the Organic Act provides: "That the laws of Hawaii not inconsistent with the Constitution or laws of the United States or the provisions of this Act shall continue in force, subject to repeal or amendment by the legislature of Hawaii or the Congress of the United States." The original Hawaiian statute defining manslaughter was not inconsistent with the Constitution or laws of the United States or the provisions of the Organic Act nor has this definition ever been repealed or amended by the legislature of the Territory of Hawaii or the Congress of the United States and thus it was one of the laws continued in force.

The next objection interposed by the defendant to the indictment is that the statute defining manslaughter is too vague and indefinite to comply with the requirements of the fifth and sixth amendments to the Federal Constitution. In order to comply with these amendments it is necessary that statutes defining crimes shall do so with such reasonable clearness and particularity that they may be understood by the ordinary mind. When a statute fulfills this requirement it is not obnoxious to that part of the Federal Constitution upon which the defendant relies. At common law manslaughter was defined as the "unlawful killing of another without malice express or implied." This definition has many times been approved

by courts of high authority and is now so fortified by judicial sanction that it is no longer open to attack. The old Hawaiian statute which has been the law in this jurisdiction since 1860 defines the crime of manslaughter with possibly more particularity than it was described at common law. Section 4119, R. L. H. 1925, provides: "Whoever kills a human being without malice aforethought and without authority, justification or extenuation by law is guilty of the offense of manslaughter." This is more specific than the common law definition in that instead of simply declaring that the homicide in addition to being without malice must be unlawful, it specifies what renders it unlawful. If it is committed without authority of law, which includes legal executions, or without justification by law, which includes self-defense, or under circumstances which the law does not recognize as an extenuation or mitigation of the crime and is not committed from motives of malice, it is, under this statute, manslaughter. It would be difficult to imagine a more accurate description of manslaughter than this. It would be impracticable to enumerate in a statute all the multitudinous circumstances under which a killing would be authorized or justified by law or extenuated by law—indeed such enumeration from possible unintentional omissions would no doubt prove more embarrassing than helpful. It is sufficient to designate the crime in general terms of such well-established meaning that they may be understood by the ordinary mind.

It is likewise no valid objection to our statute that it does not divide manslaughter into degrees. Many states, no doubt from motives of public policy, have done this, defining with more or less elaboration the constituents of each degree and graduating the punishment accordingly. There is, however, no provision of law requiring this to be done. A legislature clearly acts within its

constitutional powers when it defines manslaughter in general terms without separating it into degrees according to the circumstances under which it is committed. For instance, under our statute it is immaterial so far as the guilt of the accused is concerned, whether he kills another as the result of an act of negligence which is made criminal by law, or does so with a deadly weapon under circumstances that reduce his act to manslaughter, so long as his crime falls within the definition of manslaughter. It is solely the province of the legislature to determine whether a homicide committed by criminal negligence should be differently classified or treated more leniently than one which results from an intentional act. If the legislature does not deem it proper to draw a distinction between the two causes of death a person charged with manslaughter is not deprived of any constitutional right if the statute defining manslaughter is broad enough to include both.

The remaining questions presented for our consideration are those that relate to the sufficiency of the indictment itself. Most of these questions are raised by the second ground of the motion to quash the indictment. This ground is, "That said indictment does not state facts sufficient to constitute the offense of manslaughter under the laws of the Territory of Hawaii." The indictment is as follows: "The grand jury of the first judicial circuit of the Territory of Hawaii do present that George A. Braly, at the City and County of Honolulu, Territory of Hawaii, and within the jurisdiction of this honorable court, on the 7th day of April, 1925, unlawfully, without malice aforethought and without authority, justification or extenuation by law, in and upon one Chung Hung Wai, a human being then and there being, did make an assault; and that the said George A. Braly then and there recklessly, carelessly, negligently, wantonly, at an excessive

rate of speed, and heedlessly of the safety of other persons then and there being, unlawfully, without malice aforethought and without authority, justification or extenuation by law, did drive on that certain street and public highway, in the City and County of Honolulu aforesaid, known and designated as Beretania Street, and within the jurisdiction of this honorable court, a certain automobile into, upon and against the said Chung Hung Wai, and that by reason of the driving of said automobile by the said George A. Braly in a reckless, careless, negligent and wanton manner, at an excessive rate of speed, and heedlessly of the safety of other persons then and there being as aforesaid, into, upon and against the said Chung Hung Wai, he, the said Chung Hung Wai, was then and there violently and forcibly struck, dragged along and thrown to and upon the pavement and ground of said street and public highway, and that the said George A. Braly did then and there and thereby unlawfully, without malice aforethought and without authority, justification or extenuation by law, give to him, the said Chung Hung Wai, in and upon the body and head of him, the said Chung Hung Wai, divers mortal wounds of which said mortal wounds the said Chung Hung Wai did thereafter, on the 8th day of April, 1925, die; and so in manner and form aforesaid, and at the time and place aforesaid, the said George A. Braly did unlawfully, without malice aforethought and without authority, justification or extenuation by law, kill the said Chung Hung Wai, and did then and there and thereby commit the crime of manslaughter, contrary to the form of the statute in such case made and provided."

Omitting much of the verbiage not necessary to a determination of the questions presented, the indictment in substance alleges that the defendant on the 7th day of April, 1925, killed one Chung Hung Wai; that the

killing was done on Beretania Street in the City and
County of Honolulu; that the defendant killed the said
Chung Hung Wai by striking him with an automobile
which the defendant was then operating; that at the time
when and the place where the defendant ran said automo-
bile against and upon the said Chung Hung Wai he was
driving the same recklessly, carelessly, negligently, wan-
tonly, and at an excessive rate of speed and heedlessly of
the safety of other persons then and there being and that
without malice aforethought and without authority, jus-
tification or extenuation by law he thus killed Chung
Hung Wai. The indictment charges the killing of a
human being. It charges the time and place of the kill-
ing. It charges the means and methods by which the
killing was done. It charges that the killing was without
malice aforethought and without authority, justification
or extenuation by law. It charges that the defendant
killed Chung Hung Wai by striking him with an auto-
mobile which at the time he was driving recklessly, wan-
tonly, at an excessive rate of speed, and heedlessly of the
safety of other persons then and there being. Do these
averments show on their face that defendant committed
the crime of manslaughter as it is defined by our statute?
In order to determine this it will be helpful to examine
section 4388, R. L. H. 1925, which is as follows: "Who-
ever furiously or heedlessly of the safety of others, rides
any horse or other animal, or drives or conducts any
carriage, wagon, buggy, omnibus, cart, bicycle, automobile,
motor cycle, locomobile, or other vehicle, and thereby im-
minently endangers the personal safety of any person,
shall be punished by a fine not less than five dollars nor
exceeding five hundred." The indictment in effect charges
that the defendant violated this statute and in the act
of violating it and as a result of violating it he killed the
deceased. He is thus charged with having killed a human

being while committing an act which the statute declares to be unlawful and penal. This is a sufficient charge of manslaughter. In *The King* v. *Bush,* 1 Haw. 62, Mr. Chief Justice Lee declared the law on this subject in the following clear and forceful language: "If a person while doing or attempting to do an unlawful act, undesignedly kills another, he is guilty of murder or manslaughter, according to the nature of such act. If the act is felonious, that is, one which is highly criminal, the killing resulting from it is murder. If simply unlawful, and without any deliberate and malicious intention, it is manslaughter. For example, if one in committing burglary should kill another, he would be guilty of murder, though he intended no bodily harm to any one. * * * But where the act is wanting in the felonious intent, as where one riding furiously or carelessly through a public street, contrary to law, kills another, the offense is manslaughter. Certainly the turning, leading, or driving a wild beast in the streets of a populous town, whereby death ensues, is manslaughter. More especially is the offender guilty of manslaughter where such turning, leading, or driving is contrary to the express provisions of the statute." It is true that this statement of the law was made in 1850, ten years before our present statute defining manslaughter was enacted, but it is just as applicable to manslaughter as it is now defined as it was to manslaughter as it was defined when Chief Justice Lee delivered his charge to the jury in the *Bush* case.

It is also contended by the defendant that malice as distinguished from malice aforethought is by implication made an ingredient of manslaughter under our statutes and therefore the indictment is bad because it does not charge that the killing was done maliciously. This contention is based on sections 4121 and 4128, R. L. H. 1925. Section 4121 is as follows: "Whoever, under an indictment

for murder, or manslaughter, shall be found guilty of assault and battery shall be punished by imprisonment at hard labor not more than two years, or by fine not exceeding five hundred dollars, in the discretion of the court." Section 4128 is as follows: "A battery, or an assault and battery, is the malicious and forcible infliction of a corporal injury on another, without authority or justification by law." More specifically stated, the defendant contends that inasmuch as under section 4121 a conviction may be had of assault and battery (in which malice is made an element of the crime), under an indictment charging the crime of manslaughter, from which malice aforethought is expressly excluded it is necessarily implied from section 4119 defining manslaughter and section 4121 that malice as distinguished from malice aforethought is essential to manslaughter.

There might be some force in this reasoning if "malice" and "malice aforethought" had substantially different meanings. Whatever technical distinctions may have been attributed to them in the early history of English jurisprudence have disappeared. They have been so long, in this country at least, used interchangeably they have become synonymous. Malice aforethought means malice and nothing more. An exhaustive discussion of this subject is found in *Turner* v. *Commonwealth*, L. R. A. 1918A, 329, where it is said: "The word 'aforethought' in connection with 'malice' is not necessary to the definition of murder, it being sufficient that the act is found to have been done maliciously." *Territory* v. *Alcantara*, 24 Haw. 197. See also *Republic* v. *Yamane*, 12 Haw. 189.

It is suggested in the brief of counsel for the defendant that unless malice is an element of manslaughter it would be impossible to have a legal conviction of assault and battery under an indictment charging manslaughter. Upon this point we express no opinion.

2

Other questions raised by defendant's exceptions were not argued either in brief or orally and were therefore abandoned and need not be considered. The exceptions are overruled.

We are strongly of the opinion that the trial of cases would be greatly expedited and the ends of justice more certainly and speedily attained by an infrequent allowance of interlocutory appeals.

*H. L. Wrenn* (*H. Hathaway,* City and County Attorney, and *J. C. Kelley* and *Carrick H. Buck,* Deputies of the City and County Attorney, on the brief) for the Territory.

*C. S. Davis* (*Brown, Cristy & Davis* on the briefs) for defendant.