STATE OF HAWAII *v.* MICHAEL PATRICK MOELLER.

No. 4564.

OCTOBER 31, 1967.

RICHARDSON, C. J., MIZUHA, MARUMOTO, ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY ABE, J.

On July 3, 1965, defendant-appellant shot and killed Bradley Nalu Kaanana, a police officer of the Honolulu Police Department, at the Nuuanu Pali Lookout. The deceased together with other police officers had been directed to investigate a sniping or shooting incident at the Pali Lookout.

After defendant had been indicted for murder in the first degree in the Circuit Court of the First Circuit, an attorney was appointed by the court to defend him. Presumably because of defendant's prior record of mental illness,[1] his attorney moved for the appointment of examiners in insanity. The court appointed three psychiatrists, Robert S. Spencer, Richard D. Kepner and James G. Harrison, to determine the mental condition of defendant. They filed a letter dated September 17, 1965, stating that in their opinion "defendant is suffering from a mental disease at the present time and was suffering from the same mental disease at the time of the alleged offense. It is our further opinion that this mental disease would affect his criminal responsibility but not to the extent that he is or was incompetent to discern the nature and criminality of his acts."

---

[1]On December 5, 1964, defendant had been involved in a shooting incident at Kaena Point where he fired at his motorcycle and some people. Thereafter on February 8, 1965, he was admitted to the Hawaii State Hospital for treatment for mental illness. He was released from the Hawaii State Hospital on February 26, 1965. As an aftermath of the Kaena Point shooting incident, defendant was charged with offense of "Battery with a Weapon Obviously and Imminently Dangerous to Life" in the Circuit Court of the First Circuit, Criminal No. 35279. In connection with said charge, examiners in insanity were appointed. Based on the report of the examiners, a circuit court judge found on April 2, 1965, that defendant was insane at the time of the commission of the alleged act and that he was still insane on said date and committed him to the Hawaii State Hospital. He was discharged on May 26, 1965.

Thereafter, upon the request of said court, the psychiatrists submitted another letter dated September 23, 1965, wherein they stated "it is our opinion that Michael Patrick Moeller is of sufficient mentality to participate adequately in his own defense."

After the State had presented its case proving that defendant had shot and killed Bradley Nalu Kaanana, the State rested.

Counsel for defendant then made an opening statement to the effect that defendant was not denying that he had shot at and killed Bradley Nalu Kaanana, but that at the time he fired the gun, he was legally insane and therefore not criminally responsible for his act and should be acquitted by reason of insanity; or that if he was not insane, his power to reason was so impaired that it affected his intent and thus reduced his culpability.

The defendant's counsel proceeded to present defendant's case, introducing into evidence a certified copy of "Judgment and Order of Commitment" signed by the circuit court judge on April 2, 1965, wherein the defendant had been found insane.[2]

The only witness called by defendant was Dr. George F. Schnack, a psychiatrist. Dr. Schnack testified that based on his examination of defendant, study of defendant's personal history and record, he was of the opinion that defendant, at the time he shot and killed Bradley Nalu Kaanana, "was acting under the influence of this mental disease, made him incapable to understand what he was doing, the nature of it, and that it was criminal."

After the defendant rested, the State called several witnesses in rebuttal to prove that at the time defendant shot at and killed Bradley Nalu Kaanana, he was sane. The three psychiatrists who had been appointed by the circuit court judge to determine the sanity of defendant and who had filed the aforesaid letters were called by the State as witnesses. They each testified in detail about the physical and psychiatric examinations given defendant, study and review of defendant's personal history and record. In conclusion each of them testified that defendant was suffering from mental disorder or personality disorder or schizoid personality;

---

[2]In connection with the Kaena Point shooting incident see footnote [1].

but that in their opinion defendant knew that he was doing wrong when he killed the deceased, and that he was able to distinguish right from wrong.

The trial judge's instructions to the jury included an instruction that it could return a verdict of either (1) guilty of murder in the first degree; (2) guilty of murder in the second degree; (3) guilty of manslaughter; (4) not guilty by reason of insanity; or (5) not guilty.

The jury returned a verdict of murder in the first degree and the trial judge entered a judgment accordingly. From this judgment defendant has appealed, specifying 12 errors.

The first two specifications of error are errors allegedly made by the trial judge in connection with testimony of witnesses,[3] and are without merit.

The ten remaining specifications of error concern errors allegedly made by the trial judge in giving certain instructions over the objection of defendant and also in refusing to give certain instructions requested by defendant.

Defendant specifies as Error No. III, the trial judge's refusal to give defendant's requested Instruction No. 8 and the giving of State's requested Instruction No. 29, over his objection. The instruction given and that refused were as follows:

State's Instruction No. 29, given:

"Insanity, as the word is used in these instructions, means such a diseased and deranged condition of the mental faculties of a person as to render him incapable of knowing the nature and quality of the act he is committing *and* incapable of knowing the difference between right and wrong in relation to the act with which he is charged." (Emphasis added)

Defendant's Instruction No. 8, refused:

---

[3]Errors alleged:

(a) Admitting into evidence testimony of Leroy Keone, defendant's Mormon minister. The testimony related to defendant's participation in church activities, to show his manner of answering and asking questions. There was no testimony relating to any confidential statement or confession made by defendant to witness. The rule of evidence as to privileged communication between clergyman and communicant is not applicable.

(b) Refusing to permit defendant to cross-examine the witness Keone with respect to statements made by one Pratt, as to defendant's conduct. This was properly refused as hearsay.

"Insanity, as the word is used in these instructions, means such a diseased or deranged condition of the mental faculties of a person as to render him incapable of knowing the nature and quality of the act he is committing *or* incapable of knowing the difference between right and wrong in relation to such act." (Emphasis added)

These two instructions bring into issue the rule of criminal responsibility to be applied in this jurisdiction under the provisions of Section 249-4, R.L.H. 1955.[4] This section is similar to the rule of criminal responsibility as established by the M'Naghten case.[5]

Both Section 249-4 and the M'Naghten Rule hold that a person is criminally responsible for his act if he understands the nature of the act and knew that the act was wrong.

State's Instruction No. 29 assumes that a mentally ill person is legally responsible for his act unless he did not know the nature of the act he committed and he was unable to distinguish between right and wrong in relation to the act.

Now, assuming defendant knew the nature [and quality] of the act, but he was unable to distinguish between right and wrong in relation to the act, defendant would be guilty under the instruction.

The Nebraska court in *Knights* v. *State*, 58 Neb. 225, 78 N.W. 508, held an instruction similar to State's Instruction No. 29 to be erroneous. The court reasoned that defendant may have under-

---

[4]Section 249-4, R.L.H. 1955, reads as follows:

"§ 249-4. *Insane person.* Any person acting under mental derangement, rendering him incompetent to discern the nature and criminality of an act done by him, shall not be subject to punishment therefor; provided, that if any such person, while capable of discerning the nature and criminality of any act, entertained the intent to do the same, and subsequently does it in pursuance and execution of such intent, he shall be held responsible therefor, though the same be done in such state of mental derangement; and so also if any such person voluntarily or heedlessly induce the mental derangement by intoxication or otherwise."

[5]The M'Naghten Rule is as follows:

"* * * to establish a defense on the ground of insanity, it must be clearly proved that, at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong." *M'Naghten's Case,* 10 Clark & Fin. 200, 210, 8 Eng. Rep. 718 (1843).

stood the nature of his act, (that if he applied a lighted match to a building, it would be destroyed by fire) but at the same time he may not have had the mental capacity to distinguish between right and wrong with respect to his act. See also *People* v. *Kelly*, 302 N.Y. 512, 99 N.E.2d 552, and *People* v. *Sherwood*, 271 N.Y. 427, 3 N.E.2d 581.

We hold that under Section 249-4, R.L.H. 1955, a defendant is to be deemed insane and not criminally responsible if he is found to be suffering from a mental derangement and (1) he is incompetent to understand the nature of the act committed, or (2) if he understood the nature of the act but he was unable to distinguish between right and wrong in relation to the act.

The giving of State's Instruction No. 29 was prejudicial error.

We recognize that many courts have wrestled with this problem and because of dissatisfaction with the M'Naghten Rule, a U.S. District Court in *Durham* v. *U.S.*, 94 U.S. App. D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430, established the Durham rule, which holds that when the unlawful act was the product of a mental disease or defect, a defendant is not criminally responsible for his act.

We are also aware of the rule recommended by the American Law Institute and adopted in *U.S.* v. *Freeman*, 357 F.2d 606, where the court at page 622 said:

> "Section 4.01 provides that 'A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.' * * * we believe this test to be the soundest yet formulated and we accordingly adopt it as the standard of criminal responsibility in the Courts of this Circuit."[6]

The rule of criminal responsibility established by Section 249-4 is extremely inadequate and antiquated. It has been in our statute books without change since the compilation of the Penal Code of 1850 by Chief Justice Lee.

---

[6]American Law Institute, Model Penal Code (final draft) (1962). See also, *State* v. *Shoffner*, 31 Wis. 2d 412, 143 N.W.2d 458 (1966).

However, it is part of our statutory law and only the legislature can amend or repeal it.

We agree with the Minnesota court in *State* v. *Dhaemers*, _____ Minn. _____, 150 N.W.2d 61, at page 66, where it stated:

"While we agree that the M'Naghten rule should have been discarded with the horse and buggy, it is part of our statutory law and as such, as long as we adhere to the rule that the legislature can prescribe rules of evidence, we must adhere to the statute. It would be better if the statute were repealed so that the courts could develop rules for determining mental competency more in harmony with advances made in this scientific field since the announcement of the M'Naghten rule in 1843." [Citation and footnotes omitted]

The essential element of murder in the first degree and in the second degree is *malice aforethought*, and homicide without "malice aforethought" is manslaughter under our laws.[7] This court in *Territory* v. *Alcantra*, 24 Haw. 197, at page 200, said that "the essential difference between murder and manslaughter is that in the former crime the killing is with malice and in the latter without malice. In other words, malice is the element which distinguishes murder from manslaughter."

One of the issues of the trial in the trial court was whether because of his mental condition defendant was able to formulate a specific intent to kill or harbor *malice aforethought*, though he may have been sane as defined in Section 249-4 and knew right from wrong in firing the gun.

It should be noted that defense counsel in his opening argument made a pointed statement on this issue; and though instructions[8] on this point were given to the jury, inasmuch as judgment

---

[7] "§291-7. *Manslaughter defined.* Whoever kills a human being without malice aforethought, and without authority, justification or extenuation by law, is guilty of the offense of manslaughter." (R.L.H. 1955)

[8] State's Instruction No. 27:

"You are reminded that a person might be legally sane, as we define that term in dealing with the question of criminal responsibility, and yet be in an abnormal mental or nervous condition; and because of such condition he might be less likely or unable to have or to hold a specific intent

is to be reversed and similar issues will be raised undoubtedly, we deem it advisable to make the following comment.

We find that the instructions given were inadequate as they were not specific enough to meet the requirements of this case. On a point as important as this, defendant was entitled to a more specific instruction.

In *People* v. *Conley*, 49 Cal. Rptr. 815, 411 P.2d 911, the California court said at page 916:

"* * * Defendant's plea of 'not guilty' to the charge of first degree murder put in issue the existence of the mental states that are elements of that offense, namely, intent, deliberation, wilfulness, premeditation, and malice aforethought. * * * Accordingly, the introduction of any evidence deserving of consideration that defendant lacked any one of these mental states entitled him to an instruction as to the effect of this lack. * * * 'The defense of mental illness not amounting to legal insanity is a "significant issue" in any case in which it is raised by substantial evidence. Its purpose and effect are to ameliorate the law governing criminal responsibility prescribed by the M'Naughton rule. * * * Under the *Wells-Gorshen* rule of diminished responsibility even though a defendant be legally sane according to the M'Naughton test, if he was suffering from a mental illness that prevented his acting with malice aforethought or with premeditation and

or a certain state of mind, which is an essential ingredient of a certain crime. We have received evidence bearing on the mental and nervous condition of the defendant at the time of the alleged commission of the crime charged. Such evidence may be considered by you in determining whether or not defendant did any act charged against him, and if so, whether or not, at that time, there existed in him the specific mental factor and intent which must accompany that act to constitute a certain crime or degree of crime.'

Defendant's Instruction No. 23:

"In determining the intent with which an act is done, the jury may consider the circumstances attending the act, the manner in which it is done, the means used, the sound mind and discretion of the person committing the act, and any statements made or other acts done or committed by him.

"Where there is evidence of mental incapacity not amounting to insanity, the jury may also consider such evidence in determining whether or not the person committing the act had the mental capacity to have or to hold the intent necessary to the offense charged."

deliberation, he cannot be convicted of murder of the first degree * * * and where * * * substantial evidence sufficient to inform the court that defendant is relying upon the defense of diminished responsibility is received, it must on its own motion instruct the jury as to the legal significance of such evidence, for such an instruction is "necessary for the jury to be fully and fairly charged upon the relevant law." ' "[9] [Citation omitted]

Inasmuch as we have discussed "malice aforethought," Specification of Error No. VIII may be considered here, skipping Specifications of Error Nos. IV through VII for the moment. The error alleged is that the court gave State's Instructions Nos. 7, 8, and 12, as modified, over the objection of defense counsel.

We find that the trial judge committed no error in giving State's Instruction No. 7 which reads: "Malice aforethought means malice. There is no legal distinction between malice and malice aforethought." It is a correct statement of the law of this jurisdiction as stated by this court in *Territory* v. *Braly*, 29 Haw. 7.

State's Instruction No. 8 which was given by the trial judge over the objection of defendant is a definition of the word "malice" as contained in Section 247-4, R.L.H. 1955, and reads as follows:

" 'Malice' in respect to the commission of any offense, except in cases where it is otherwise expressly provided or plainly intended, includes not only hatred, ill will and desire of revenge; but cruelty of disposition or temper; and also a motive or desire of gain or advantage to the offender or another; or of doing a wrong or injury to any person or persons, or to the public. It also includes the acting with a heedless, reckless disregard or gross negligence of the life or lives, the health or personal safety, or legal rights or privileges of another, or others, many or few, known or unknown; also the wilful violation of a legal duty or obligation, and wilful contravention of law."

---

[9] Wells-Gorshen Rule refers to rule established by *People* v. *Wells*, 33 Cal. 2d 330, 202 P.2d 53; *People* v. *Gorshen*, 51 Cal. 2d 716, 336 P.2d 492.

A careful analysis of Instruction No. 8 shows that under the instruction, defendant could have been found guilty of murder in the first degree without proof that defendant had killed Officer Kaanana with deliberate premeditated malice aforethought, though Section 291-1, R.L.H. 1955, as amended, defines murder in the first degree as the killing of a human being with deliberate premeditated malice aforethought; or murder in the second degree without proof that defendant had killed Officer Kaanana with malice aforethought, though Section 291-2, R.L.H. 1955, as amended, defines murder in the second degree as the killing of a human being with malice aforethought. Under the instruction it was only necessary for the State to prove that defendant had been guilty of "wilful violation of a legal duty or obligation; and wilful contravention of law" as such action would be deemed "malice" under the foregoing definition. By giving Instruction No. 8, in effect, the trial judge had instructed the jury that "malice aforethought" was not an essential element of either murder in the first or second degree. However, as we have noted above, under our laws homicide in the absence of "malice aforethought" cannot be an offense higher than manslaughter.

Moreover, Section 247-4, R.L.H. 1955, provides that the definition of "malice" as contained in the section is not applicable "in cases where it is otherwise provided or plainly intended." There is no question that our legislature used the term "malice aforethought" in the homicide statute to mean something more than the definition of "malice" contained in Section 247-4. We hold that the trial judge committed prejudicial error when he gave State's Instruction No. 8.

The defendant also contends that the trial judge committed prejudicial error when he gave the jury State's Instruction No. 12, as modified, which was as follows:

"Malice is implied by law from every intentional cruel act committed by one person against another, however sudden the act may be. The law considers that he who commits a cruel act voluntarily, does it maliciously. Every person is presumed to contemplate and intend the natural and ordinary consequences of his own voluntary act; if the act, voluntarily

and wilfully done, has a direct tendency to destroy the life of another, the natural conclusion from the fact is that the destruction of the person's life was intended."

It should be noted that the defendant objected to the giving of State's Instruction No. 12 on the ground that the instruction was ambiguous as the term "cruel act" was not defined. Finally, State's Instruction No. 12, as modified, was given, the trial judge stating "State's No. 12 will be given over objection of the defendant." No ground of the defendant's objection is noted.

The record in this case indicates that more time and effort should have been spent in settling instructions. The ground for every objection should be noted and every attorney should be given an opportunity to think about and to make such objections, stating distinctly the matter to which he objects and the grounds of his objection as required by Rule 30 (e) , H.R.C.P.

Though the defendant has not fully met the requirement of Rule 30 (e), we deem it advisable to make the following comment.

The two basic issues in the trial were (1) whether the defendant was insane at the time he committed the act and therefore not criminally responsible for his act; or (2) whether the defendant because of his mental disorder, though not insane, was able to formulate a specific intent to kill or harbor malice aforethought.

The instruction in question, in effect, states that whenever it is proved that a defendant killed another, malice aforethought is presumed. This instruction is very similar to Section 291-2, R.L.H. 1955, which reads: "When the act of killing another is proved, malice aforethought shall be presumed * * *."

The instruction had nothing to do with the two basic issues before the jury. As stated by this court in *Territory* v. *Cutad*, 37 Haw. 182, at page 188: "* * * the provisions of the statute are not applicable to every case of murder and care should be exercised in its use." Also *State* v. *Foster*, 44 Haw. 403.

The trial judge committed prejudicial error in giving State's Instruction No. 12, as modified, because the instruction served no useful purpose but may have confused the jury.

The law in this jurisdiction is that the defendant is presumed to have been sane at the time he committed the offense; however, if any evidence introduced raises the question of the sanity of a defendant or insanity becomes a defense, then the State is required to establish the sanity of the defendant beyond a reasonable doubt. *Territory* v. *Adiarte,* 37 Haw. 463.

During the trial of this case, both parties recognized that defense of insanity was relied upon by the defendant and defense counsel offered testimony of Dr. George Schnack, a psychiatrist, to prove that the defendant was insane and therefore not criminally responsible for the offense.

The defendant in Specification of Error No. IV alleges that the trial judge erred in giving State's Instruction No. 30, as modified, which reads as follows:

"When a person charged with a crime raises the defense of insanity, and the proof shows that at times he was insane, but at other times, which we call lucid intervals, he was able to distinguish between right and wrong and to know the nature and quality of his acts, the law presumes that if he committed the act charged he committed it during a lucid interval.

"But if the evidence in the case raises any question concerning the defendant's sanity at the time of the act charged, it is the duty of the State to establish the defendant's sanity beyond a reasonable doubt."

The State contends that the foregoing instruction merely states the law of this jurisdiction that a defendant is presumed to have been sane at the time he committed the offense; however, whenever any evidence introduced raises the defense of insanity, then the burden of proof shifts and the State must prove that the defendant was sane at the time he committed the offense beyond a reasonable doubt.

In this case, evidence of insanity of the defendant had been introduced, and the burden was upon the State to prove that the defendant was sane at the time he committed the offense. However, under the first paragraph of Instruction No. 30, if evidence showed that the defendant had been sane at times and insane at other times, the burden would be shifted to the defendant to

prove that when he committed the offense he was insane because the State would be aided by the presumption that the offense was committed during a lucid interval. Thus, we must conclude that the first paragraph of the instruction is contrary to the law of this jurisdiction.

The State also contends that the Defendant's Instruction No. 10 given by the trial judge states the correct law and therefore the trial judge committed no prejudicial error by giving the jury State's Instruction No. 30. There is no question that the second paragraph of the State's Instruction No. 30 and the Defendant's Instruction No. 10 state the correct law of this jurisdiction. But this does not vitiate the error in the first paragraph of State's Instruction No. 30, which we hold to be prejudicial.

This error was compounded by the trial judge's refusal to give Defendant's Instruction No. 9 on temporary insanity as follows: "[i]nsanity of short duration, referred to in law as temporary insanity, is as fully recognized as insanity of longer duration."

There is evidence to indicate that the defendant throughout his life has had periods of rationality and irrationality. Under said circumstances, the defendant was entitled to the benefit of instruction on temporary insanity.

The defendant alleges as Specification of Error No. VI the trial judge's refusal to give Defendant's Instruction No. 11, as requested, and giving in its place a modified version. The two instructions were as follows:

No. 11, as requested:

"In cases where it is given in evidence upon the trial of any person charged with any offense, that the person was insane at the time of the commission of the offense, and the person is acquitted, the jury shall be required to find specially whether such person was insane at the time of the commission of the offense, and to declare whether such person was acquitted by them on account of the insanity. *If they find that the person was insane at the time of the commission of the offense, the court before whom the trial is had shall commit such person to the state hospital, there to be detained as an*

*insane person, subject to discharge by a circuit court or judge upon proof of the termination of the insanity."* (Underscoring added)

No. 11, as modified and given, omitted the last sentence (underscored) of No. 11, as requested.

The defendant contends that the jury should have been instructed as to the consequence of a verdict of not guilty by reason of insanity and therefore the trial judge committed prejudicial error when he refused to give the instruction as requested. Under our laws, the jury's duty is to determine the facts and apply the law as given by the trial court in reaching a verdict and the jury was properly instructed by State's Instruction No. 22.[10] The jury has nothing to do with the punishment.

The Missouri court on an identical issue in *State* v. *Garrett*, _____ Mo. _____, 391 S.W.2d 235 at page 242 said:

"Such an instruction has no legitimate bearing on any fact issue which the jury must decide; it is entirely clear that it might, if given, tend to influence the jury to find the existence of mental irresponsibility by deviating from the strict confines of the evidence on the subject of mental disorder. The weakness of the whole contention is rather clearly shown in the opinion which really started the controversy (Taylor, supra) where the Court said that, although such an instruction would have no *'theoretical* bearing' on the case, it might have a very *'practical* bearing'; and also, in Missouri Bar Journal, December 1963, loc. cit. 733, where the author states ( quoting) that such instruction 'may be an enormous influence on the jury's deliberations * * *.' No doubt it would

---

[10]State's Instruction No. 22 reads:

"You have nothing to do in this case with the question of punishment. Under our law the duty and responsibility of fixing the punishment is placed in the hands of the court and other public officers. Guilt or innocence does not depend upon the penalty for the crime, but upon the evidence showing or failing to show guilt. Your sole duty is to take the evidence as submitted and determine what the facts are, then be governed by the law, as the court gives the law to you, and then bring in a verdict according to the law and the evidence submitted. You should not be governed by mere sentiment, conjecture, sympathy, passion, public opinion or public feeling."

be, but at the same time it would divert the jury from the real merits of the insanity issue by the introduction of this extraneous consideration, which actually is nothing less than an invitation for the jury to find the defendant mentally irresponsible *because* he would then be confined anyway. * * *"

In *State* v. *Park*, 159 Me. 328, 193 A.2d 1, the court in affirming the trial court's refusal to instruct the jury as to the effect of a verdict of not guilty by means of insanity at page 5 said:

"It has long been the settled practice in our State that the function of the jury is to find the facts and to apply the law as given by the Court to the facts in reaching their verdict. Punishment, or whatever may transpire after the verdict, is not the concern of the jury."

We hold that the trial judge committed no prejudicial error by refusing to give Defendant's Instruction No. 11.

The defendant in Specification of Error No. VII alleges that the trial judge committed prejudicial error in giving Court's Instruction No. 5, which reads as follows:

"Ladies and gentlemen of the jury, the discharge of the person who was ordered to be hospitalized at the State Hospital as a mentally ill person is primafacie evidence, of the good mental health of such person when so discharged."

The uncontroverted evidence is that the defendant was suffering from mental disorder on July 3, 1965, at the time he fired the fatal shot. Under the circumstances, the trial judge committed prejudicial error in giving the foregoing instruction.

As to the remaining specifications of error, after a careful review we find that they are without merit.

Judgment reversed and remanded for a new trial.

*James A. King* for defendant-appellant.

*Richard T. Ishida*, Deputy Prosecuting Attorney, City & County of Honolulu, (*John H. Peters*, Prosecuting Attorney, with him on the brief) for plaintiff-appellee.