STATE OF HAWAII, Plaintiff-Appellee, *v.* GENE HOWARD BAKER, also known as Eugene H. Baker, Defendant-Appellant

NO. 9258

(CRIMINAL NO. 54908)

DECEMBER 3, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

*Per Curiam.* This is an appeal from a conviction of three counts of manslaughter in violation of Hawaii Revised Statutes (HRS) § 707-702-1(a), four counts of reckless endangering in the first degree in violation of HRS § 707-713, and one count of criminal property damage in the first degree in violation of HRS § 708-820. Appellant contests the denial by the trial court of Appellant's proffered instruction No. 7 on diminished capacity. We affirm the ruling of the trial court.

I.

Appellant Gene Howard Baker resided at a boarding house located at 730 Kinau Street; a two-story wooden structure. On the night of August 13, 1980, he was evicted following a fist fight with another boarder who had accused him of setting a fire on the premises earlier that evening. Around midnight of August 15, 1980, the boarding house was set ablaze and almost completely destroyed. Experts determined that the fire had originated on the second floor stairwell landing. Air samples taken shortly after the fire revealed large amounts of flammable liquids which, among other things, confirmed that the fire had been intentionally set.

Chemical analysis of Appellant's clothing and fingernail scrapings taken shortly after the incident revealed traces of flammable liquids of the type recorded at the scene of the fire. Subsequent police inquiries confirmed that Appellant had returned to the boarding house shortly before the fire. Appellant voluntarily submitted to police interrogation and, after proper *Miranda* warnings and waivers, made a statement which he later repeated on tape. He was then arrested.

Aside from the facts set out below, no evidence of Appellant's mental state or capacity was presented at the trial.

In his statement, Appellant related that in the past, whenever he was hurt by someone's actions, he would seek revenge by setting

some item of the individual's property afire. He continued in this activity until about a year prior to August 1980 when he turned to religion. He attributed his manner of seeking revenge to Satan who he said visited him in weak moments. Appellant admitted to setting fires on three previous occasions. He stated that in each case Satan came to him and compelled his actions.

Recalling the events of August 15, 1980, Appellant related that he returned to the boarding house to retrieve some medication. He found that the locks on the door to his room had been changed and he returned down the stairway. He stopped at the second floor landing and stood there for a few minutes contemplating the circumstances of his eviction. At that point, Satan came to him. He struggled with Satan's influences calling on the Lord for help. Appellant did not recall setting the blaze.

In his taped statement, Appellant informed police that he did not think he was in need of psychiatric help. He indicated that he was presently attending a clinic at St. Francis Hospital and that if he was in need of such help he would go to a "head specialist" there. Later he stated, "maybe you guys are right . . . that I might need help."

No instruction on insanity defense was requested. At the close of the trial, Appellant requested an instruction on diminished capacity which was rejected by the court.[1]

## II.

The doctrine of diminished capacity provides that evidence of an abnormal mental condition not amounting to legal insanity but tending to prove that the defendant could not or did not entertain the specific intent or state of mind essential to the offense should be

---

[1] Appellant's requested instruction No. 7 read:

If you find from the evidence that at the time the alleged crime was committed, the defendant had substantially reduced mental capacity, whether caused by mental illness, mental defect, intoxication, or any other cause, you must consider what effect, if any, this diminished capacity had on the defendant's ability to form any of the specific mental states that are essential elements of the crimes charged.

Thus, if you find that the defendant's mental capacity was diminished to the extent that you have a reasonable doubt whether he did act meaningfully, willfully and intentionally, you cannot find him guilty of intentionally committing the crimes with which he is charged.

474

considered for the purpose of determining whether the crime charged or a lesser degree thereof was in fact committed. *People v. Conley*, 49 Cal. Rptr. 815, 411 P.2d 911 (1966); *People v. Taylor*, 220 Cal. App. 2d 212, 33 Cal. Rptr. 654 (1963); Annot., *Mental and Emotional Condition as Diminishing Responsibility for Crime*, 22 A.L.R.3d § 2 at 1232 (1968). Courts applying the doctrine have indicated that where evidence is presented sufficient to inform the court that the defendant is relying upon a diminished capacity defense the defendant is entitled to a specific instruction drawing the attention of the jury to the evidence. *People v. Conley, supra,* 49 Cal. Rptr. at 820, 821, 411 P.2d at 916, 917.

Generally, a defense of diminished capacity warranting an instruction has been recognized as relevant in determining the existence of the mental elements essential to conviction under specific intent crimes; most notably the elements of premeditation, deliberation, and malice essential to the crime of murder. *Id., State v. Moeller,* 50 Haw. 110, 433 P.2d 136 (1967); *State v. Santiago,* 55 Haw. 162, 516 P.2d 1256 (1973).

We note parenthetically that the doctrine of diminished capacity was initially developed to ameliorate the law governing criminal responsibility prescribed by the M'Naghten rule on criminal insanity. *People v. Goedecke,* 56 Cal. Rptr. 625, 628-9, 423 P.2d 777, 780-1 (1967); *State v. Conley, supra.* Cases decided by this court prior to enactment of the Hawaii Penal Code in 1972, HRS Title 37, Chapter 701, *et seq.,* have recognized the diminished capacity doctrine. *State v. Moeller, supra; State v. Santiago, supra.* However, the subsequent adoption of the more lenient Model Penal Code standard of legal insanity pursuant to HRS § 704-400, raises the question of whether a diminished capacity defense requiring specific instruction enjoys a continued vitality in our courts. Under the facts of this case, we do not reach this issue here.

In the instant case, Appellant was charged with the general intent crimes of manslaughter, HRS § 707-702-1(a), reckless endangering in the first degree, HRS § 707-713, and criminal property damage in the first degree, HRS § 708-820.[2] A conviction

---

[2] The applicable statutory language is as follows:
§ 707-702 *Manslaughter.* (1) A person commits the offense of manslaughter

under each of these crimes requires a showing that Appellant's conduct was reckless.[3] Under the present facts and circumstances we hold that the proferred instruction on diminished capacity is not applicable and that the trial court did not err in denying such instruction.

Accordingly, the decision of the court below is affirmed.

*Keith Kiuchi (Alvin T. Sasaki* on the brief), Deputy Public Defenders, for defendant-appellant.

*Shirley Smith,* Deputy Prosecuting Attorney, for plaintiff-appellee.

---

if:
> (a) He recklessly causes the death of another person; . . . .

§ 707-713 *Reckless endangering in the first degree.* (1) A person commits the offense of reckless endangering in the first degree if he employs widely dangerous means in a manner which recklessly places another person in danger of death or serious bodily injury. . . .

§ 708-820 *Criminal property damage in the first degree.* (1) A person commits the offense of criminal property damage in the first degree if he intentionally damages property and thereby recklessly places another person in danger of death or bodily injury.

[3] HRS § 702-206(3)(a) provides:
> A person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk by engaging in such conduct.