PER CURIAM.
Anthony A. Hall appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse the conviction, vacate the sentence, and remand for a new trial.
In July 1987 Hall and three acquaintances, Dan Bowen, Elizabeth Towne, and Bunny Dixon, decided to go to Virginia and work with a carnival. Because they had no money or means of transportation, they planned to stop a car on the road, rob whomever stopped, and steal that person’s vehicle. To this end, Towne and Dixon posed as hitchhikers with Hall and Bowen hidden nearby. After the victim stopped, they overpowered him, bound his ankles, wrists, mouth, and head with tape, placed him in the car trunk, and drove north from Orlando. Upon entering Volusia County they stopped, removed the victim from the ■ trunk, and dragged him into a wooded area where Dixon, an alleged satanist, carved an inverted cross on his chest and abdomen. Bowen, using a .36-caliber revolver, and Hall, using a .22-caliber automatic pistol, then shot the victim seven times, resulting in his death.
With the victim’s car, cash, and credit card, the foursome drove northward but soon parted company. Bowen and Towne later took authorities to the victim’s body and implicated Hall and Dixon in the murder. As a result, Hall was arrested in Missouri and confessed twice, once to Missouri authorities and again to Volusia County deputies. On August 26, 1987, a grand jury indicted Hall and his three accomplices for first-degree murder.
The trial court granted Hall’s motion to sever and his trial began in March 1989. At trial the state introduced both of Hall’s taped confessions into evidence. In addition the medical examiner testified that either or both of two gunshot wounds, one to the head and the other to the abdomen, caused the victim’s death and that a .22 caliber weapon caused each of these wounds. The jury found Hall guilty of both premeditated murder and felony murder and recommended the death penalty. The court sentenced Hall to death, finding four aggravating factors [1] and one nonstat-utory mitigating factor.[2]
Hall’s defense was that he was insane at the time of the offense. The first issue Hall raises on appeal is that the trial judge reversibly erred by refusing to allow Hall to present expert testimony during the guilt phase of the trial to support his insanity defense. Because we agree in part with Hall, we find it unnecessary to address the other issues he raises[3] and reverse his conviction and remand to the trial court with instructions to grant Hall a new trial.
*884 During the guilt phase of the trial, at the very end of Hall’s case-in-chief and after Hall had testified in his own defense, Hall’s counsel proffered the written reports of Professor Randall Balmer, an assistant professor of religion at Columbia University, and Dr. Andrew Farinacci, a clinical psychologist, as expert testimony. Counsel contended that Balmer and Farinacci could testify as experts in support of Hall’s defense, as stated in his notice of insanity defense, that “[t]he nature of the temporary insanity at the time of the offense is that the defendant acted under the influence of Satan and/or Bunny Dixon and therefore was robbed of his free will and did not know right from wrong under the McNaghten Rule at the time of the offense.” The trial court refused to admit the expert testimony, stating that, “to repeat the Court’s ruling as a matter of law,[4] there’s no defense in Florida, I hope no other place in the country that says the devil made me do it.”[5]
It is well established that a trial court has broad discretion concerning the admissibility of expert testimony, and a court’s determination will not be disturbed on appeal absent a clear showing of error. Way v. State, 496 So.2d 126 (Fla.1986); Stano v. State, 473 So.2d 1282 (Fla.1985), cert. denied, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986); Johnson v. State, 438 So.2d 774 (Fla.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724-(1984). This discretion, however, is not boundless. Johnson v. State, 393 So.2d 1069 (Fla.1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). In the case at bar, for this Court to find that the trial court erred by refusing to allow Professor Balmer and Dr. Farinacci to testify as experts during the guilt phase of the trial, not only must these witnesses clearly be qualified to provide expert testimony on Hall’s sanity or lack thereof, but their testimony must also clearly be relevant to that issue.
Upon review of the record we find no error in the trial court’s refusal to allow Professor Balmer to testify as an expert on Hall’s alleged insanity. As a religion professor, Balmer, as he freely admitted in his proffered written report, is not qualified to testify as to the sanity or insanity of any individual. A witness may only testify as an expert in those areas of his expertise. Rowe v. State, 120 Fla. 649, 163 So. 22 (1935); Kelly v. Kinsey, 362 So.2d 402 (Fla. 1st DCA 1978); Upchurch v. Barnes, 197 So.2d 26 (Fla. 4th DCA 1967). See § 90.702, Fla.Stat. (1989). Although Bal-mer may be qualified to offer expert testimony on various religious subjects, including satanism, defense counsel did not proffer his report for that purpose, and it was, therefore, within the trial court’s discretion to refuse to allow him to testify. See Ramirez v. State, 542 So.2d 352 (Fla.1989); Johnson v. State, 314 So.2d 248 (Fla. 1st DCA 1975).
On the other hand, Dr. Farinacci, as a clinical psychologist experienced in evaluating an individual’s mental state, and who had personally examined Hall, clearly was *885 qualified to testify as an expert on Hall’s sanity. See Ross v. State, 386 So.2d 1191 (Fla.1980); Cross v. Lakeview Center, Inc., 529 So.2d 307 (Fla. 1st DCA 1988); Executive Car & Truck Leasing, Inc. v. DeSerio, 468 So.2d 1027 (Fla. 4th DCA), review denied, 480 So.2d 1293 (Fla.1985). The question remains, however, whether his testimony clearly was relevant to Hall’s claim of insanity.
In Florida a person is presumed sane, and, in a criminal prosecution, the burden is on the defendant to present evidence of insanity. Preston v. State, 444 So.2d 939 (Fla.1984).[6] The legal test of insanity in Florida, for criminal purposes, has long been the so-called “M’Naghten Rule.” Anderson v. State, 276 So.2d 17 (Fla.1973); Campbell v. State, 227 So.2d 873 (Fla.1969), cert. dismissed, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970); Piccott v. State, 116 So.2d 626 (Fla.1959), appeal dismissed, cert. denied, 364 U.S. 293, 81 S.Ct. 106, 5 L.Ed.2d 83 (1960); Davis v. State, 44 Fla. 32, 32 So. 822 (1902). Under the M’Naghten Rule an accused is not criminally responsible if, at the time of the alleged crime, the defendant was by reason of mental infirmity, disease, or defect unable to understand the nature and quality of his act or its consequences or was incapable of distinguishing right from wrong. Mines v. State, 390 So.2d 332 (Fla.1980), cert. denied, 451 U.S. 916, 101 S.Ct. 1994, 68 L.Ed.2d 308 (1981); Wheeler v. State, 344 So.2d 244 (Fla.1977).
In light of the requirements of the M’Naghten Rule any expert testimony by Dr. Farinacci on Hall’s mental state, to be relevant, must concern whether Hall (1) was incapable of distinguishing right from wrong (2) as a result of a mental infirmity, disease, or defect. See Chestnut v. State, 538 So.2d 820 (Fla.1989); Zeigler v. State, 402 So.2d 365 (Fla.1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982). Both of these aspects of the insanity defense must be addressed. Expert testimony that a defendant suffered from a mental infirmity, disease, or defect without concluding that, as a result, the defendant could not distinguish right from wrong is irrelevant. Gurganus v. State, 451 So.2d 817 (Fla.1984); Kight v. State, 512 So.2d 922 (Fla.1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988); Zamora v. State, 361 So.2d 776 (Fla. 3d DCA 1978), cert. denied, 372 So.2d 472 (Fla.1979).
In this case Hall claimed that he was incapable of understanding the wrongfulness of his acts because he was under the influence of satan and/or Bunny Dixon. In the proffered report, however, Dr. Fari-nacci did not base his opinion of Hall’s inability to distinguish right from wrong solely on the alleged influence of satan. Although Dr. Farinacci noted in his report that Hall said that he felt “weird” after Bunny Dixon conducted a “satanic ritual” the day the incident in question occurred, his diagnosis of Hall’s mental state at the time of the offense made no mention of the effects of satan on Hall’s actions. Rather, his report stated that Hall displayed characteristics of individuals with schizophrenic disorders and that, on the day of the shooting, Hall was operating with a state of altered consciousness brought on by extreme stress, namely fear for his own life and that of his sister. As a result, Dr. Farinacci concluded that Hall was unable to distinguish right from wrong at the time of the offense. Thus, his proffered report indicated that Hall was unable to distinguish right from wrong at the time of the offense due to a clinically recognized mental disease or defect separate and apart from any satanic influence. Such evidence meets the requirements of the M’Naghten rule and clearly was relevant to Hall’s defense of insanity.
Concluding that Dr. Farinacci was both qualified to testify and could provide relevant testimony as to Hall’s insanity defense, we hold that the trial court erred in refusing to allow Farinacci to testify dur *886 ing the guilt phase of trial.[7] Because the trial court's ruling effectively prevented Hall from presenting his insanity defense to the jury, we cannot hold that, beyond a reasonable doubt, this error was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
We therefore reverse the conviction, vacate the sentence, and remand to the trial court with instructions to grant Hall a new trial.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.

. The capital felony was committed while the defendant was engaged in the commission of a kidnapping, § 921.141(5)(d), Fla.Stat. (1989); the capital felony was committed for pecuniary gain, § 921.141(5)(f); the capital felony was especially heinous, atrocious, or cruel, § 921.141(5)(h); and the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification, § 921.141(5)(i).

. The court found in mitigation that Hall's stepfather physically abused Hall until he was thirteen years old and that Hall was a good son and a good brother. The court, however, specifically refused to find that Hall committed the murder while under the influence of extreme mental or emotional disturbance, that he acted un- ' der duress or domination of another, or that his capacity to appreciate the criminality of his conduct was substantially impaired.

.Hall also raised the following issues: (1) Whether the trial court improperly limited voir dire examination; (2) whether the trial court erred in denying Hall’s motion to suppress his confessions; (3) whether the trial court erred in failing to grant various pretrial motions; (4) whether the trial court erred in failing to give jury instructions requested by the defense; (5) whether the trial court incorrectly considered the mitigating evidence; (6) whether Florida’s capital sentencing scheme is unconstitutional; (7) whether the death penalty is disproportionate in this case; (8) whether the heinous, atrocious, and cruel aggravating factor is unconstitutionally vague; (9) whether the trial court erred in finding cold, calculated, and premeditated in aggravation; and (10) whether the trial court erred in finding pecuniary gain in aggravation.

. The judge was refering to his previous ruling on Hall’s pretrial motion to appoint experts at county expense to testify as to the effects of satanism on Hall’s behavior. The judge refused to appoint the experts on satanism to assist the defense in the guilt phase, ruling instead that any three of these experts would be appointed for use in the sentencing phase of the trial if Hall were convicted of first-degree murder. The judge had already appointed a psychiatrist to assist Hall in preparing his defense pursuant to Fla.R.Crim.P. 3.216(a), but the defense did not call this expert as a witness.

. The influence of the devil on the criminally accused as a basis or explanation for their actions is not a novel proposition. Courts, however, have given little, if any, credence to such a claim. E.g., Christian v. State, 351 So.2d 623 (Ala.1977) (possessed by devil); Stevens v. State, 256 Ga. 440, 350 S.E.2d 21 (1986) (victim possessed by devil); State v. Baker, 67 Haw. 471, 691 P.2d 1166 (1984) (compelled by satan); State v. Jackson, 480 So.2d 481 (La.Ct.App.1985) (devil made me do it); Commonwealth v. Schnopps, 390 Mass. 722, 459 N.E.2d 98 (1984) (devil made me do it); State v. Watson, 211 Mont. 401, 686 P.2d 879 (1984) (possessed by demon spirit); Van White v. State, 752 P.2d 814 (Okla.Crim.App.1988) (possessed by devil); Plough v. State, 725 S.W.2d 494 (Tex.Ct.App. 1987) (under the devil’s influence); McBride v. State, 706 S.W.2d 723 (Tex.Ct.App.1986) (victims were the devil).

. If a defendant introduces evidence sufficient to present a reasonable doubt about sanity, the presumption of sanity vanishes and the state must prove the accused’s sanity beyond a reasonable doubt. Yohn v. State, 476 So.2d 123 (Fla.1985).

. In all fairness to the trial court, when Hall’s counsel proferred the reports of Professor Bal-mer and Dr. Farinacci at the close of his case-in-chief, he had steadfastly claimed insanity and/or diminished capacity due to satanism alone until that point. Thus, Farinacci’s prof-erred opinion that Hall displayed schizophrenic-type characteristics which, in addition to extreme duress, prevented Hall from distinguishing right from wrong, came as some suprise to the court. At that point in the trial, and based on its previous rulings on the validity of Hall's satanic influence defense, the court was in the unenviable position of either declaring a mistrial, granting a continuance to allow the state to locate and present rebuttal witnesses, or excluding Farinacci’s testimony. The court chose the last option and remained consistent with its previous rulings.