**Electronically Filed
Supreme Court
SCWC-20-0000727
01-JUL-2025
09:12 AM
Dkt. 19 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

ROLAND S. GUIEB, individually and derivatively on behalf of
GUIEB INCORPORATED, Respondent/Plaintiff/Counterclaim
Defendant-Appellant/Cross-Appellee,

vs.

ROBERT S. GUIEB,
Petitioner/Defendant-Appellee/Cross-Appellant,

and

GUIEB INCORPORATED,
Petitioner/Defendant/Counterclaimant-Appellee/Cross-Appellant,

and

PACIFIC WELDING AND MANUFACTURING, LLC;
GUIEB GROUP LLC; RSG ENTERPRISES, LLC,
Petitioners/Defendants-Appellees/Cross-Appellants.

SCWC-20-0000727

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-20-0000727; CASE NO. 1CC171001045)

JULY 1, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, AND GINOZA, JJ.,
WITH CIRCUIT JUDGE VIOLA IN PLACE OF DEVENS, J., RECUSED

OPINION OF THE COURT BY EDDINS, J.

Two brothers ran an automotive business together. Robert invited his older brother Roland to join his business. They formed Guieb Inc. and opened several muffler repair shops together before their relationship soured.

Roland sued Robert after Robert made decisions Roland disagreed with. Roland complained that Robert used their company, Guieb Inc., for his sole benefit, and that Robert used his personal companies to steal Guieb Inc.'s trade name and most profitable shop.

Roland alleged unfair and deceptive trade practices (UDAP) and unfair methods of competition (UMOC) under Hawai'i Revised Statutes (HRS) § 480-2 (2008), and deceptive trade practices under HRS § 481A-3 (2008) in count 12. He alleged that Robert used the trade name "Exhaust Systems Hawaii Kalihi Kai" for his personal LLC (Guieb Group LLC). This caused confusion with their joint venture Guieb Inc.'s trade name, "Exhaust Systems Hawaii."

The circuit court granted Robert's motion for partial summary judgment (MPSJ) and dismissed count 12. It did not see a "genuine issue of material fact as to any passing off goods or services of those of another because the two entities . . . were selling the exact same product and service." See HRS § 481A-3(a)(1).

2

Roland sought punitive damages for several claims, including fraud, misrepresentation, nondisclosure, and breach of fiduciary duty. Before the jury heard closing arguments, the trial court granted Robert's motion for judgment as a matter of law (JMOL), denying Roland's punitive damages request. Punitive damages did not go to the jury. Later the court denied Roland's renewed JMOL on that issue.

Last, Roland claimed that Robert breached a fiduciary duty of "kinship." Robert filed an MPSJ arguing that brotherhood did not establish a fiduciary duty. He argued that he had a fiduciary duty to the corporation, and that duty arose solely from his status as an officer and director of Guieb Inc. The circuit court granted Robert's motion. It ruled the caselaw was "clear that kinship by itself is not sufficient to establish a confidential relationship."

Both brothers appealed. The ICA reversed the circuit court on three issues.

First, the ICA held that Roland's UDAP claim (count 12) should have gone to the jury because Roland presented evidence that Robert represented Guieb Inc. and Guieb Group as the same entity.

Second, the ICA held that the jury should have considered punitive damages. The ICA reasoned that because Robert took the most profitable muffler shop for his own LLC without telling

3

Roland, and because the jury found in Roland's favor on the fraudulent non-disclosure, unjust enrichment, and trade name infringement claims, the court should have instructed the jury on Roland's punitive damages claim.

Last, the ICA agreed with Roland - brotherhood created a kinship fiduciary duty. Summary judgment was not appropriate, the ICA said. A jury may have found that Roland, based on his "confidential familial relationship" with Robert, relied on Robert's representations. They may have found that Robert only acquired majority ownership of Guieb Inc. because he promised Roland that the ownership imbalance would not affect the business. And the jury may have found that Robert breached his kinship fiduciary duty when he allegedly "eliminate[d] Roland's check-writing authority, reduce[d] his salary, and misappropriate[d] [Guieb Inc.'s] King Street shop and other assets." Thus, the ICA held, Roland established a genuine issue of material fact regarding breach of fiduciary duty based on kinship.

We agree with the ICA that the jury should have considered Roland's count 12 claims and punitive damages. But we disagree that kinship creates a fiduciary duty.

The ICA correctly reversed the circuit court's dismissal of count 12. Though we rule that Roland lacked standing for his UDAP claim and diverge from the ICA there, Roland presented

4

sufficient evidence to overcome summary judgment for his HRS § 480-2(e) UMOC and HRS § 481A-3 deceptive trade practices claims. Therefore, count 12 should have gone to the jury

Next, we agree with the ICA that punitive damages should also have gone to the jury. We conclude that Roland presented sufficient evidence for the jury to decide whether Robert acted with the state of mind to justify punitive damages. There was evidence that may have supported a jury's punitive damages finding. A reasonable juror may have concluded (1) that "stealing" the King Street shop for Robert's personal company (Guieb Group), (2) taking employees from Guieb Inc. to benefit Guieb Group, (3) reducing Roland's salary, and (4) making Guieb Inc. pay most advertising costs (to the benefit of Guieb Group) showed Robert's intent to harm Roland, or that Robert acted with reckless disregard for the risk of harm to Roland.

Thus, we affirm the ICA's conclusion that the circuit court erred in granting Robert's JMOL on the punitive damages issue.

Last, we disagree with the ICA that Robert had a fiduciary duty to Roland based on their brotherly relationship. A "kinship" duty does not exist in Hawai'i law. And we decline to adopt it now. We affirm the circuit court's MPSJ on this issue.

**I.**

In the 1980s, Robert Guieb asked his older brother, Roland Guieb, to work with him. They registered Guieb Inc. in 1991 and

5

did business as "Exhaust Systems Hawaii."  The corporation specializes in welding repair, and procuring, installing, replacing, and repairing automobile exhaust systems and related components.  Robert is the majority owner at 55% while Roland owns 45%.  They are Guieb Inc.'s only directors, officers, and owners.  Roland is the corporation's treasurer.

Guieb Inc. opened its first shop in Waipahu in 1985.  That property is owned by RSG Enterprises LLC, an LLC that Robert and Roland both own.  The second shop opened on King Street in 1989, and a third location opened in Kailua two years later.

The brothers' relationship began to fracture in 2011.  In 2014, Robert established his own entity, Guieb Group LLC (Guieb Group), to sell and service mufflers.  Guieb Group used the trade name "Exhaust Systems Hawaii Kalihi-Kai."  Roland accused Robert of stealing Guieb Inc.'s trade name and intentionally confusing its customers.  Robert claimed Roland agreed that Guieb Group could use the trade name.

In 2016, Robert canceled Guieb Inc.'s monthly lease at the King Street Shop.  Guieb Group, which Robert wholly owned, took over the shop.  Robert said the decision was intended to lower Guieb Inc.'s expenses.  Roland accused Robert of "stealing" the most profitable shop.

Roland alleged that Robert implemented arbitrary policy changes that benefitted Robert at Roland's expense, such as

relocating personnel from one location or job function to another to benefit Robert's own companies, and decreasing Roland's salary. Robert also claimed Roland misappropriated Guieb Inc.'s funds for his personal use. As a result, Robert restricted Roland's access to and control over Guieb Inc.'s finances. Both brothers maintain that the other ignored their meeting requests.

In June 2018, Roland, individually and derivatively on behalf of Guieb Inc., filed a first amended complaint. Roland named Robert, Guieb Inc., Pacific Welding and Manufacturing, LLC (Robert's wholly owned company), Guieb Group, and RSG Enterprises as defendants. Relevant to this appeal, Roland alleged breach of kinship fiduciary duty, unfair and deceptive trade practices and unfair methods of competition. Roland also requested punitive damages.

Count 4 of Roland's amended complaint alleged "Breaches of Fiduciary Duties Arising Out of Kinship." Roland's complaint said that he "co-founded" Guieb Inc. "based upon his kinship with Robert, and his trust and confidence in Robert based upon his lifetime of brotherhood. . . . Robert has breached fiduciary duties to Roland arising out of the close kinship which were the basis of and motivation for" Guieb Inc.

Count 11 alleged that Robert registered the trade name "Exhaust Systems Hawaii" for Guieb Inc. Twenty years later,

7

Robert registered "Exhaust Systems Hawaii Kalihi-Kai." According to Roland, Guieb Group passed off the "Exhaust Systems Hawaii Kalihi-Kai" trade name as being identical to Guieb Inc. This "misappropriation" of Guieb Inc.'s trade name, he claimed, confused Guieb Inc.'s customers.

Count 12 alleged "Unfair and Deceptive/Unfair Competition" under HRS §§ 480-2 and 481A-3. Roland contended Robert injured him and Guieb Inc. by employing unfair and deceptive trade practices and unfair methods of competition, including (1) passing off goods or services as those of Guieb Inc.; (2) misrepresenting or causing confusion about the goods or services; and (3) disparaging Guieb Inc.'s business.

Before the jury trial, the brothers both filed motions for partial summary judgment. Relevant to the appeal issues, Circuit Court of the First Circuit Judge John M. Tonaki granted Robert's motion for partial summary judgment on counts 4 and 12.

Regarding Roland's count 12 claim, the circuit court reasoned that no genuine issue of material fact remained because both Guieb Inc. (Exhaust Systems Hawaii) and Guieb Group (Exhaust Systems Hawaii Kalihi-Kai) sold the same product. See HRS § 481A-3(a)(1).

Roland requested punitive damages for several counts: breach of fiduciary duty, fraud, misrepresentation and nondisclosure, oppressive conduct intended to squeeze him out,

and wanton usurpation of corporate opportunity. The court granted Robert's judgment as a matter of law motion as to Roland's punitive damages requests.

As for Roland's kinship fiduciary duty claim (count 4), the circuit court ruled that brotherhood did not establish a fiduciary relationship.

On December 30, 2019, the jury returned a verdict in favor of Roland on his fraudulent non-disclosure, unjust enrichment, and trade name infringement claims. For fraudulent non-disclosure, the jury awarded Roland $42,000 against Robert, and $28,000 against Guieb Group. For unjust enrichment, the jury awarded Guieb Inc. $42,000 against Guieb Group. Last, for trade name infringement, the jury awarded Guieb Inc. $10,000 against Robert and $20,000 against Guieb Group.

## II.

### A. Roland's Count 12 Claims Should Have Gone to the Jury

The circuit court erred by granting Robert's MPSJ on count 12. Roland offered sufficient evidence to overcome summary judgment on that count.

Count 12 alleged unfair and deceptive trade practices and unfair methods of competition under HRS § 480-2, and deceptive trade practices under HRS § 481A-3 (Uniform Trade Practices Act). Robert characterized count 12 as duplicative of other counts, and a "novel combination" of HRS chapters 480 and 481A.

9

He filed a MPSJ, arguing that Roland's trade name infringement and unfair competition claims were baseless. "Exhaust Systems Hawaii," Robert said, is a generic trade name that merely describes the nature of Guieb Inc.'s business, and "merits no legal protection." Robert also argued that Roland leveled anti-trust accusations, yet had no proof that Guieb Group's use of "Exhaust Systems Hawaii Kalihi-Kai" harmed or reduced competition.

Robert explained that courts use a "likelihood of confusion" standard when analyzing trade name infringement and unfair competition claims. Under that standard, a generic trade name has no legal protection. Because "Exhaust Systems Hawaii" merely described the nature of Guieb Inc.'s business, Robert argued, it was generic.

Roland countered. There was strong evidence of "confusion" due to Robert's use of "Exhaust Systems Hawaii Kalihi Kai." Roland maintained that both trade names - "Exhaust Systems Hawaii" and "Exhaust Systems Hawaii Kalihi Kai" - were used for different businesses that both sold, installed, and repaired "similar, if not identical, muffler systems." (Emphases added.) Roland also said Robert's expert undermined his claim that using "Exhaust Systems Hawaii Kalihi Kai" did not affect Guieb Inc.'s business. Robert's expert reported that the Guieb Inc. website did not distinguish between the two companies: "[Guieb Inc.'s]

10

website address is https://www.exhaustsystemsHawaii.net/.
Reviewing the website, it could appear that Exhaust Systems
Hawaii and Exhaust Systems Hawaii Kalihi-Kai are one entity as
all the shops are listed.  <u>There is nothing on the website to
delineate the two different ownership groups</u>."  (Emphasis
added.)

The court granted Robert's MPSJ and dismissed count 12.  It
did not see a "genuine issue of material fact as to any passing
off goods or services of those of another because the two
entities . . . were selling the exact same product and service."

The ICA reversed.  It reasoned that Robert's own expert
stated that Guieb Group, trade name "Exhaust Systems Hawaii,"
could be viewed as a competitor to Guieb Inc., trade name
"Exhaust Systems Hawaii Kalihi-Kai."  The expert also said that
Guieb Inc.'s website did not distinguish between the two
ownership groups.  Thus, the ICA concluded that the jury should
have considered Roland's HRS § 480-2 and HRS § 481A-3 UDAP
claims.

We agree with the ICA's result, but mention a standing
issue the ICA missed.  Roland's UDAP claim is barred because he
lacks standing as a non-consumer under § 480-2(d).

"Unfair methods of competition and unfair or deceptive acts
or practices in the conduct of any trade or commerce are
unlawful."  HRS § 480-2(a).  But subsection (d) limits who can

bring a claim under the chapter: "No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section." HRS § 480-2(d) (emphasis added).

Because Roland was not a consumer, the AG, or director of the office of consumer protection, he had no standing to bring a UDAP claim. HRS § 480-2(d).

But though HRS § 480-2(d) barred Roland's UDAP claim, he still had standing to bring a UMOC claim under HRS § 480-2(e). That subsection allows "[a]ny person [to] bring an action based on unfair methods of competition declared unlawful by this section." HRS § 480-2(e). Roland qualifies as "any person" per HRS §§ 480-1 (2008) and 480-2(e). Davis v. Four Seasons Hotel Ltd., 122 Hawai'i 423, 429, 228 P.3d 303, 309 (2010).

The conduct that supports Roland's UDAP claim may also support his UMOC claim. Hawaii Medical Ass'n v. Hawaii Medical Serv. Ass'n, Inc., 113 Hawai'i 77, 111, 148 P.3d 1179, 1213 (2006) ("[P]laintiffs may rely upon HMSA's alleged unfair or deceptive acts or practices to support their claims of unfair methods of competition."). The UDAP and deceptive trade practice claims are alike. Id. "[P]laintiffs may bring claims of unfair methods of competition based on conduct that would also support claims of unfair or deceptive acts or practices."

Id. Thus, Roland may use the same conduct to prove both his UDAP and UMOC claims. See id.

Roland's HRS § 481A-3 claim may also have merit. The same UMOC conduct may support the deceptive trade practices claim. Hawaii Medical Ass'n, 113 Hawaiʻi at 111, 148 P.3d at 1213 (quoting Star Markets, Ltd. v. Texaco, Inc., 945 F. Supp. 1344, 1348 (D. Haw. 1996) (cleaned up) ("[T]he same allegations could support claims of both §§ 481A and 480-2 unfair methods of competition."). HRS § 481A-3, titled "Deceptive Trade Practices," reads in part:

> (a)  A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:
>
> (1) Passes off goods or services as those of another;
>
> (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of good or services;
>
> (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

HRS § 481A-3(a)(1)-(3) (emphasis added).

"Confusion" is one way to win a HRS chapter 481A deceptive trade practices claim. See HRS § 481A-3(a)(2)-(3). Because Robert used the trade name "Exhaust Systems Hawaii Kalihi Kai," Roland believed there was strong evidence of "confusion." Roland pointed to the near identical trade names, and Robert's expert's testimony about the Guieb Inc. website.

13

Like the ICA, we believe Roland presented sufficient evidence to overcome summary judgment on count 12's HRS § 481A-3 unfair trade practices claim and HRS § 480-2(e) unfair methods of competition claims.  The circuit court erred.

**B.    The Circuit Court Erred in Dismissing Roland's Punitive Damages Demand**

Next, punitive damages.

Tort law is predominantly common law.  The common law's tradition evolves, and courts make decisions to reflect societal values.

As the common law rambles on, this court often turns to the American Law Institute's (ALI) restatements to track advancements in tort law.  See Bynum v. Magno, 106 Hawai'i 81, 86 n.12, 101 P.3d 1149, 1154 n.12 (2004).

Now decades since our leading punitive damages case, the ALI has urged adjustments to the remedy that deters and punishes egregious tortious conduct.  These changes streamline the mental states that may yield punitive damages awards, and they clip dated language.

Like before, we rely on the ALI's insight to refresh Hawai'i law.  To recover punitive damages, we hold that a plaintiff must (1) establish recoverable tort liability, and (2) establish by clear and convincing evidence that the defendant intended to harm the plaintiff or others, or recklessly disregarded a

14

substantial risk of harm to the plaintiff or others, or otherwise acted in an outrageous or malicious manner. Restatement (Third) of Torts § 39 (Am. L. Inst., Tentative Draft No. 3, 2024).

Here, the circuit court erred by granting Robert's JMOL on punitive damages. Roland presented sufficient evidence to get punitive damages before the jury.

### 1.    The Punitive Damages Standard

Hawai'i's go-to punitive damages case, Masaki, reaffirmed this court's Territory era standard. Masaki v. Gen. Motors Corp., 71 Haw. 1, 16-17, 780 P.2d 566, 575 (1989). "The plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." Id. (citing Bright v. Quinn, 20 Haw. 504, 512 (Haw. Terr. 1911)).

But Masaki broke from precedent. It adjusted the standard of proof from "preponderance of the evidence" to "clear and convincing." 71 Haw. at 16-17, 780 P.2d at 575.

Masaki covered many punitive damages law concepts. It channeled the Second Restatement's approach to acts or omissions that do not support that remedy. "[P]unitive damages are not

15

awarded for mere inadvertence, mistake, or errors of judgment." Id. at 7, 780 P.2d at 571 (citing Restatement (Second) of Torts § 908, cmt. b).

In one big way, Masaki tacked from the Second Restatement. This court held that punitive damages may be awarded for strict products liability (a mental state-less tort). In contrast, the Second Restatement recommended that punitive damages be awarded only if the defendant's conduct reflected an intent to harm or reckless indifference. Restatement (Second) of Torts § 908, cmt. b (1979). "Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate — which is to say, conduct involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others." Id.

Masaki departed from the Second Restatement's focus on a tortfeasor's mental state. Instead, the wrongdoer's aggravated conduct justified punitive damages. See Masaki, 71 Haw. at 11, 780 P.2d at 572-23. In some cases, the court held, there was no state of mind precondition. "We see no reason," the court said, "why punitive damages may not also be properly awarded in a

16

products liability action based on the underlying theory of strict liability where the plaintiff proves the requisite aggravating conduct on the part of the defendant." Id. Removal of the mental state inquiry "does not preclude consideration of the defendant's aggravating conduct for the purpose of assessing punitive damages." Id. This holding, the court reasoned, still served the deterrent goal of punitive damages because "'something more' than mere commission of a tort" is needed. Id. at 12-13, 780 P.2d at 573.

In Hawai'i, negligence may support a punitive damages award. "This court has long recognized that punitive damages are recoverable in tort action based on negligence." Id. at 10, 780 P.2d at 572 (citing Bright, 20 Haw. at 511). "In rejecting the argument that [punitive] damages are incompatible with the underlying theories of negligence and strict liability," a Wisconsin Supreme Court case proved persuasive:

> This court has rested its analysis of punitive damages not on the classification of the underlying tort justifying compensatory damages but on the nature of the wrongdoer's conduct. . . .
>
> Punitive damages rest on allegations which, if proved, demonstrate a particular kind of conduct on the part of the wrongdoer, which has variously been characterized in our cases as malicious conduct or willful or wanton conduct in reckless disregard of rights or interests.

Id. (quoting Wangen v. Ford Motor Co., 294 N.W.2d 437, 442 (Wis. 1980)). Masaki reasoned that "[s]o long as the plaintiff established the requisite 'outrageous' conduct[] . . . there was

17

no reason to disallow an award of punitive damages in a negligence or strict liability action."  Id.  (citing Wangen, 294 N.W.2d at 443).

Thus, Hawai'i's punitive damages standard allows juries to award punitive damages for negligence or strict liability.

## 2.   A New Punitive Damages Standard

This court values the ALI's wisdom, but we do not unblinkingly follow the Restatement's principles.

Here, we believe the Third Restatement sensibly evolves Hawai'i's punitive damages law.  We adopt our new standard from the Restatement (Third) of Torts § 39 Punitive Damages:

> (a) A plaintiff who establishes a defendant's liability in tort, and
>
> (1) who further establishes that the defendant is liable for compensatory or nominal damages (§§ 2-38), or who establishes a right to recover money or other property through an equitable or restitutionary remedy (§§ 42, 61-63) or through replevin, ejectment, quiet title, or a similar remedy (§§ 58-59), and
>
> (2) who further establishes by clear-and-convincing evidence that the defendant intended to harm the plaintiff or others, recklessly disregarded a substantial risk of harm to the plaintiff or others, or otherwise acted in an outrageous or malicious manner may also recover punitive damages in the discretion of the factfinder.

Restatement (Third) of Torts § 39.

We also adopt the ALI's contemporary definitions of intentionally and recklessly.  "A person intends a harm or other consequence if '(a) the person acts with the purpose of producing that consequence; or (b) the person acts knowing that

18

the consequence is substantially certain to result.'"
Restatement (Third) of Torts, § 39, cmt. e (quoting Restatement
(Third) of Torts: Phys. & Emot. Harm § 1 (2010)).

The Third Restatement also defines recklessly:

> A person acts recklessly in engaging in conduct if:
> (a) the person knows of the risk of harm created by the
> conduct or knows facts that make the risk obvious to
> another in the person's situation, and (b) the precaution
> that would eliminate or reduce the risk involves burdens
> that are so slight relative to the magnitude of the risk as
> to render the person's failure to adopt the precaution a
> demonstration of the person's indifference to the risk.

Restatement (Third) of Torts, § 39, cmt. e (quoting Restatement
(Third) of Torts: Phys. & Emot. Harm § 2)).

The ALI's Restatement (Third) of Torts: Remedies, approved
in 2024, aligns with and enhances our present caselaw.  It
offers a streamlined approach and refines the complicated
standard that presently guides our courts.

The ALI's new punitive damages standard complements the
Restatement (Third) of Torts: Physical & Emotional Harm.  There
the ALI updated its defintions for the mental states associated
with torts.  "This Restatement states a similar but not
identical standard in language more consistent with the general
approach to mental states and tortious conduct in the
Restatement Third, Torts."  Restatement (Third) of Torts, § 39,
cmt. e.

Second, the Restatement shed outdated mental state
concepts.  It simplified the punitive damages inquiry.  Id.

19

Punitive damages are appropriate when "'defendant intended to harm the plaintiff or others' (a clearer mental standard than 'evil motive'), or when defendant has 'recklessly disregarded a substantial risk of harm to the plaintiff or others' (arguably a clearer mental standard, and as explained below, a more appropriate mental standard, than 'reckless indifference to the rights of others')."  Id.

These standards, the Restatement explained, are based on mental state definitions revised by the Restatement (Third) of Torts: Liability for Physical and Emotional Harm.  Id.  The Third Restatement "unblends" the Second Restatement's previously-singular definition of "intent" into two forms of intent: "purpose" and "knowledge."  Restatement (Third) of Torts: Phys. & Emot. Harm § 1.

The Third Restatement also updates the Second Restatement's definition of "recklessness."  The shift reflects an understanding that wrongdoing to support liability comes in many forms and that courts and jurors may find it hard to parse mental states when applying old-fashioned and overlapping terms like "wanton" and "willful."  Restatement (Third) of Torts: Phys. & Emot. Harm § 2.

> Terms conveying the idea of wrongdoing that is aggravated — even though falling short of the wrongdoing involved in intentional torts — are common in the discourse of torts.  Sometimes, the term used is "gross negligence."  Taken at face value, this term simply means negligence that is especially bad.  Given this literal interpretation,

> gross negligence carries a meaning that is less than recklessness. The term "willful or wanton misconduct" is also frequently employed. "Willful misconduct" sometimes refers to conduct involving an intent to cause harm; but "wanton misconduct" is commonly understood to mean recklessness. Frequently, courts refer to conduct that displays a "reckless disregard for risk" or a "reckless indifference to risk." When a person's conduct creates a known risk that can be reduced by relatively modest precautions, to state that the person displays a reckless disregard for risk is equivalent to stating that the person's conduct is reckless.

Id. § 2, cmt. a.

The Restatement's recalibrated treatment of mental states highlights the wide range of "aggravated conduct" that may establish a tort. And the Restatement better defines that scope by pulling rusty terms like "willful," "wanton" and "gross misconduct." See Restatement (Third) of Torts: Phys. & Emot. Harm § 2.

The Restatement (Third) of Torts § 39 moves away from similarly ill-fitting words. Restatement (Third) of Torts, § 39 ("[A plaintiff must] establish[] by clear-and-convincing evidence that the defendant intended to harm the plaintiff or others, recklessly disregarded a substantial risk of harm to the plaintiff or others, or otherwise acted in an outrageous or malicious manner may also recover punitive damages in the discretion of the factfinder."). The punitive damages standard for intent and recklessness now complements the intentional and reckless state of mind standard from the Restatement (Third) of Torts: Phys. & Emot. Harm §§ 1 & 2.

What about long-standing punitive damages terms like "malicious" or "outrageous"?

The Third Restatement reasons that those words retain marginal utility. The Restatement explains that most outrageous or malicious conduct includes either the intent to harm or reckless disregard of a substantial risk of harm. Restatement (Third) of Torts § 39, cmt. e. Yet because aggravated conduct to merit punitive damages may straddle situations where a mental state did not clearly drive the conduct, or should not operate to spare a wrongdoer from a punitives remedy, the Restatement does not entirely sideline the seasoned terms. The Third Restatement "preserves the 'outrageousness' language of the Restatement Second, Torts, as an alternative catch-all for situations in which a factfinder determines that defendant's conduct is so outrageous as to deserve punishment or deterrence through punitive damages, even if plaintiff does not prove defendant's mental state, or if the factfinder views the effects on plaintiff as seriously wrongful but not necessarily harmful." Id. "Outrageous" and "malicious" remain, the Restatement also explains, because many older statutes and cases still rely on this traditional language. Id.

The ALI's preservation of "malicious" and "outrageous" also reflects how punitive damages increasingly remedy social rather than purely individual harms. Rather than focusing on intent or

22

recklessness that harms a person, the ALI suggests that punitive damages also aim to deter conduct that risks injuring non-party bystanders or larger societal groups (like consumers). See Restatement (Third) of Torts, § 39, cmt. e. These principles align with developments in our caselaw. See Bright, 20 Haw. at 512; Masaki, 71 Haw. at 10-11, 780 P.2d at 572-73. Hawai'i courts may award punitive damages for negligence or strict products liability to deter socially harmful conduct. See Masaki, 71 Haw. at 10-11, 780 P.2d at 572-73. Thus, "malicious" and "outrageous" retain vitality in our punitive damages framework.

The Restatement (Third) of Torts acknowledges the social loss caused by outrageous or malicious conduct, even if the tortfeasor did not act with intent or recklessness. See Restatement (Third) of Torts, § 39, cmt. e. The Third Restatement explains that the mental states set forth in § 39(a)(2) include harms to the plaintiff "or others." Restatement (Third) of Torts, § 39, cmt. e. It tagged "or others" to the reckless definition because "recklessness is rarely directed at any specific target. A reckless driver endangers everyone in the same segment of highway, and a manufacturer who sells a defective product endangers everyone who uses the product." Id. Thus, broader harms (or risk of harm) to society as a whole justify punitive damages. See id.

Developments to the ALI's punitive damages principles show the remedy's value to redress broad social harms - beyond discouraging socially undesireable behaviors directed at others. See David J. Gilmartin, Status and Trends in State Product Liability Law: Punitive Damages, 14 J. of Legis. 249, 250 (1987) ("One primary objective of the deterrent function is to prevent businesses from treating compensatory damages as a cost of doing business."). Scholars have also commented on the shift from the "narrow band of malicious, intentionally wrongful conduct" to "'reckless' conduct, performed with lack of attention to the consequences for the health and safety of others in society." Catherine M. Sharkey, Punitive Damages Transformed into Societal Damages, in Punishment and Private Law 155, 161 (Elise Bant, Wayne Courtney, James Goudkamp & Jeannie Marie Paterson eds., 2021). Redressing social harms, a goal advanced by product liability cases, shapes punitive damages' purpose beyond retribution, the "cruelty between individuals." See id.

An attention to social cost fits our caselaw. See Bright, 20 Haw. at 512; Masaki, 71 Haw. at 10-11, 780 P.2d at 572-73. If the conduct is malicious or outrageous, then punitive damages may be awarded for negligence or strict products liability. Masaki, 71 Haw. at 10-11, 780 P.2d at 572-73 ("So long as the plaintiff established the requisite 'outrageous' conduct[] . . . there was no reason to disallow an award of punitive damages in

24

a negligence or strict liability action."); see Bright, 20 Haw. at 512 (negligent defendant "continued on his way in his automobile without stopping to render assistance or make any inquiries" after causing accident with a street car).

The Third Restatement's approach also aids the advancement and understanding of Hawai'i's common law. States of mind like "malice" and "wanton" are hard to pin down. See Randall H. Endo, Punitive Damages in Hawaii: Curbing Unwarranted Expansion, 13 U. Haw. L. Rev. 659, 673-74 (1991). "Hawaii's verbose standard [still] includes terms such as 'willful,' 'wanton,' 'oppressive,' and 'malicious' . . . [but] these terms are not clearly defined." Id. And unlike some other states, Hawai'i lacks statutory definitions covering the elements of punitive awards. Id. at 673 n.97; see, e.g., Cal. Civ. Code § 3294 (allowing punitive damages for "oppression, fraud, or malice," and defining those statutory terms).

Punitive damages are civil, yet quasi-criminal in their purpose and effect. See Restatement (Third) of Torts, § 39, cmt. f (supporters of higher burdens of proof in punitive damages point to the "quasi-criminal nature of a punitive-damages determination"); Masaki, 71 Haw. at 16, 780 P.2d at 575 ("[P]unitive damages are a form of punishment and can stigmatize the defendant in much the same way as a criminal conviction.").

25

Thus, we believe it's useful to look back at the removal of "malice" from criminal law.  It resembles similar improvements identified by the ALI to civil law.

Terms like "malice" and "wanton" once were criminal law staples.  In 1962, though, the Model Penal Code decommissioned "malice."  See Paul H. Robinson & Markus D. Dubber, The American Model Penal Code: A Brief Overview, 10 New Crim. L. Rev. 319, 334 (2007).  Malice had long separated murder from manslaughter.  Id.  But the concept became obsolete for criminal law purposes.  Id.  "In criminal law - where malice once enjoyed historical prominence - contemporary commentators have dismissed malice as an opaque 'legal term of art with little connection to its non-legal meaning.'"  Marc O. DeGirolami, Reconstructing Malice in the Law of Punitive Damages, 14 J. Tort L. 193, 205 (2021).

Pre-statehood criminal law in Hawai'i used the term "malice" to classify homicides.  For instance, the Supreme Court of the Kingdom of Hawai'i ruled that absent "malice aforethought," a jailer's deadly blow to an inmate was manslaughter, not murder.  The King v. Sherman, 1 Haw. 88, 88 (Haw. Kingdom 1853).  After the overthrow, the Revised Laws of Hawai'i provided that "[w]hoever kills a human being without malice aforethought and without authority, justification or extenuation by law is guilty of the offense of manslaughter."  Territory v. Braly, 29 Haw. 7, 12 (Haw. Terr. 1926) (citing Revised Laws of Hawai'i § 4119

26

(1925)).  "[M]alice is the element which distinguishes murder from manslaughter."  Territory v. Alcantara, 24 Haw. 197, 200 (Haw. Terr. 1918).  Then during early statehood, "malice aforethought" endured as murder's state of mind.  State v. Moeller, 50 Haw. 110, 116, 433 P.2d 136, 141 (1967).

In 1972, the Hawaiʻi Penal Code detached "malice" and its cognates.  The state of mind associated with "evil motive," "ill-will," and "spite" was out.  Also out were other outmoded terms, "wanton" and "wilful."  Four mental states, "intentionally," "knowingly," "recklessly," and "negligently," were in.  1972 Haw. Sess. Laws Act 9, § 206 at 43.

Turning to the civil justice system, malice has long guided punitive damages.  See Bright, 20 Haw. at 512; Lake Shore & M.S. Ry. Co. v. Prentice, 147 U.S. 101, 107 (1893).  Yet "malice" is ill-defined.  While "malice as a textual element of punitive damages is practically ubiquitous, there is, at present, no cohesive account of what malice means."  DeGirolami, supra, at 198.

In Bright, the court adopted "malice" as a feature of punitive damages.  It quoted an 1893 U.S. Supreme Court case to hold that a court may award punitive damages if the defendant "has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations."  See Bright, 20 Haw. at 512 (quoting Prentice, 147

27

U.S. at 107).  Bright then quoted another Supreme Court case to complete the second part of its punitive damages test: punitive damages may also be awarded where there has been "some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences."  Id. (quoting Milwaukee & St. P.R. Co. v. Arms, 91 U.S. 489, 495 (1875)).  Decades later, Masaki recited this standard word for word:

> The plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.

71 Haw. at 16-17, 780 P.2d at 575 (citing Bright, 20 Haw. at 512).

Since the late 1800s, our caselaw has stuck to "wantonly," "oppressively," "malice," and "wilful."  Bright imitated the federal standard.  See Bright, 20 Haw. at 512.  But since Bright, this court has not distinctively defined these terms.  See Masaki, 71 Haw. at 16-17, 780 P.2d at 575; Chin Kee v. Kaeleku Sugar Co., Ltd., 29 Haw. 524, 532 (Haw. Terr. 1926) ("This court has further held that vindictive damages are recoverable in actions of tort when the defendant's misconduct has been wilful or when he has acted with a reckless indifference to the rights of others."); Goo v. Continental Cas.

28

Co., 52 Haw. 235, 239, 473 P.2d 563, 566 (1970) ("In this jurisdiction we have long recognized the wisdom of allowing punitive damages for willful, malicious, wanton or aggravated wrongs where a defendant has acted with a reckless indifference to the rights of another.").

Then, those terms made more sense. But today, where the law has regrounded mental states for precision and relevance to modern times, they no longer fit. "Malice," along with "wantonly" and "oppressively," have a dated quality unhelpful to the contemporary fact-finder. As one commentator put it: "To define these terms as conduct which 'implies a spirit of mischief or criminal indifference to civil obligations,' does not significantly help the trier of fact to determine punitive damage liability." Endo, supra, at 673 n.99; see Masaki, 71 Haw. at 11, 780 P.2d at 572. We believe that clearer definitions will help sharpen the punitive damages inquiry and better assist juries.

Our civil jury instructions reflect the unwieldy present standard. The Pattern Civil Jury Instruction on punitive damages – last updated last century - has clunky subparts. Wordy definitions populate the law that our courts command jurors to follow. For example, "[a]n act is 'wanton' when it is reckless, heedless, or characterized by extreme foolhardiness, or callous disregard of, or callous indifference to, the rights

29

or safety of others." Pattern Civil Jury Instruction 8.14. Also, "[a]n act is 'willful' when it is premeditated, unlawful, without legal justification, or done with an evil intent, with a bad motive or purpose, or with indifference to its natural consequences." Pattern Civil Jury Instruction 8.13. And "[a]n act is 'malicious' when it is prompted or accompanied by ill will or spite." Pattern Civil Jury Instruction 8.16. These arcane, multi-part definitions are apt to vex jurors and muddle the punitive damages question.

This court has long-respected the ALI's analysis of common law advancements to tort law. Bynum recapped instances when this court relied on the Restatement (Second) of Torts to advance common law doctrines:

> This court has many times relied on the Restatement (Second) of Torts as persuasive authority. See, e.g., Hac v. Univ. of Hawai'i, 102 Hawai'i 92, 106, 73 P.3d 46, 60 (2003) (adopting elements and approach of Restatement (Second) of Torts § 46 (1965) for tort of intentional infliction of emotional distress); Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 386, 742 P.2d 377, 384 (1987) (relying on Restatement (Second) of Torts § 314(A) (1965) to establish the duty of innkeeper to guest "to take reasonable action to protect the latter against unreasonable risk of physical harm"); Ono v. Applegate, 62 Haw. 131, 137–38, 612 P.2d 533, 539 (1980) (citing Restatement (Second) of Torts § 285 (1965) to hold that Hawai'i's "liquor control statute does impose a duty upon a tavern keeper not to serve a person under the influence of liquor"); Stewart v. Budget Rent-A-Car Corp., 52 Haw. 71, 75, 470 P.2d 240, 243 (1970) (adopting Restatement (Second) of Torts § 402A (1965) for strict products liability); and Chun v. Park, 51 Haw. 462, 468, 462 P.2d 905, 909 (1969) (adopting Restatement (Second) of Torts § 552 (Tentative Draft No. 12, 1966) as "a fair and just restatement of the law on the issue of negligent misrepresentation").

See Bynum, 106 Hawai'i at 86 n.12, 101 P.3d at 1154 n.12.

To propel Hawaiʻi's punitive damages standard to contemporary times, we rely on the Restatement again.

The ALI's latest revision offers a clearer mental standard for courts, parties, and jurors.  In contrast, malice with its "evil motive" and other similar mental states lack practical applicability and precision.  See Restatement (Third) of Torts, § 39, cmt. e.  The ALI recast punitive damages to be "more consistent with the [Restatement's] general approach to mental states and tortious conduct."  Id.  We agree.

Still, as mentioned, we do not completely discard long-standing punitive damages concepts like "malicious" and "outrageous."  Retaining malicious and outrageous conduct in our law protects inclusion of wide-ranging conduct that may justify punitive damages awards.  See Restatement (Third) of Torts, § 39, cmt. e ("The standards stated here retain outrageousness and malice as necessary backups for the inevitable ambiguities of these categories as applied to widely varied fact patterns.").

This "catch all" is important because Hawaiʻi law allows punitive damages for negligent torts.  See Masaki, 71 Haw. at 4-5, 780 P.2d at 569-70.  Thus, we believe that negligent torts and strict liability torts committed in a "malicious" or "outrageous" manner may support a punitive damages award.  See id.

31

Last, we address the need for a plaintiff to establish recoverable tort liability.  This requirement focuses on some form of recoverable liability (either in equity, or via nominal damages), but does not necessarily require compensatory damages.  Because this court has previously held that plaintiffs may recover punitive damages without establishing compensatory damages, this standard aligns with our caselaw.  See Howell v. Associated Hotels, Ltd., 40 Haw. 492, 500 (Haw. Terr. 1954) ("In other words, where the plaintiff had proved a violation of a legal right, [they] should be able to recover punitive damages if the case is such as would call for punitive damages.").  "Punitive or exemplary damages are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future."  Masaki, 71 Haw. at 6, 780 P.2d at 570 (emphasis added) (citing D. Dobbs, Handbook on the Law of Remedies, § 3.9, at 204 (1973); Restatement (Second) of Torts § 908 (1979)).  Thus, while compensatory damages are not a prerequisite for punitive damages, plaintiffs must establish recoverable tort liability.

We hold that a plaintiff must (1) establish recoverable tort liability, and (2) establish by clear and convincing evidence that the defendant intended to harm the plaintiff or

32

others, or recklessly disregarded a substantial risk of harm to the plaintiff or others, or otherwise acted in an outrageous or malicious manner.

### 3. The Punitive Damages Evidentiary Standard

We now turn to the plaintiff's burden of proof to get the punitive damages issue before the jury.

In a jury trial, a judge first determines as a matter of law whether to allow the jury to consider punitive damages. A plaintiff must present sufficient evidence to support a factual finding that a defendant acted with "inten[t] to harm the plaintiff or others, recklessly disregarded a substantial risk of harm to the plaintiff or others, or otherwise acted in an outrageous or malicious manner." See Restatement (Third) of Torts § 39(a)(2).

Here, the circuit court granted Robert's JMOL dismissing Roland's punitive damages issue. Hawai'i Rules of Civil Procedure (HRCP) Rule 50, Judgment as a Matter of Law guides the sufficient evidence inquiry. HRCP Rule 50(a)(1) reads:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(Emphasis added.)

Only if all the evidence and its reasonable inferences, viewed in the plaintiff's favor, reveal "no evidence to support a jury verdict" on punitive damages, does a defendant win a motion for judgment as a matter of law regarding punitive damages. See Miyamoto v. Lum, 104 Hawai'i 1, 7, 84 P.3d 509, 515 (2004).

A circuit court does not determine whether a jury could find punitive damages by clear and convincing evidence. Goran Pleho, LLC v. Lacy, 144 Hawai'i 224, 239-40, 439 P.3d 176, 191-92 (2019). The trial court does not assess the burden of proof. Rather, the court simply determines if there is any legally sufficient evidence to instruct the jury on punitive damages. The jury then evaluates the quality of that evidence and whether it meets the clear and convincing standard. See Goo, 52 Haw. at 239, 473 P.2d at 566; Masaki, 71 Haw. at 26, 780 P.2d at 580.

**4.    The circuit court erred in granting Robert's JMOL on punitive damages because Roland presented sufficient evidence to support a punitive damages finding**

We agree with the ICA that punitive damages should've gone to the jury.

After the evidence closed, Robert moved for JMOL as to punitive damages. The court granted the motion. So the jury heard nothing about punitive damages.

Appellate courts review a trial court's JMOL rulings anew. Ray v. Kapiolani Med. Specialists, 125 Hawai'i 253, 261, 259 P.3d 569, 577 (2011). A court must deny a JMOL regarding punitive damages if there is *any* evidence that supports that remedy. See HRCP Rule 50(a)(1); Miyamoto, 104 Hawai'i at 7, 84 P.3d at 515 (JMOL is only appropriate if there is *no evidence* to support a jury verdict). The circuit court's standard is whether there is "sufficient evidence," not whether there is "clear and convincing" evidence. Goran Pleho, LLC, 144 Hawai'i at 239-40, 439 P.3d at 191-92.

Under Masaki, the circuit court erred by granting Robert's JMOL. There was sufficient evidence to instruct a jury on punitive damages. Also, under the standard we adopt today, Roland presented evidence that a jury could find that Robert intended to harm Roland, that he recklessly disregarded the risk of harm to Roland, or that he acted in an outrageous or malicious manner. Restatement (Third) of Torts § 39(a)(2).

Roland identified five evidentiary areas that may merit a punitive damages award. First, Roland presented evidence that Robert "stole" the King Street shop from Guieb Inc., decreasing the corporation's annual revenue by hundreds of thousands of dollars. Second, Roland elicited evidence to suggest that Robert misappropriated the Guieb Inc. trade name "Exhaust Systems Hawaii" because Robert's own company, Guieb Group, used

35

the trade name "Exhaust Systems Kalihi Kai" without Roland's permission.

Third, Roland showed that Robert hired away "valued employees" from Guieb Inc. for his own business (Guieb Group); one an experienced general manager who made the King Street shop especially profitable. Fourth, Roland presented evidence that Robert "drastically" reduced his salary. Last, Roland presented evidence to suggest that Robert manipulated Guieb Inc. and Guieb Groups's advertising costs so that Guieb Inc. paid more than its share.

Viewing this evidence in the light most favorable to non-movant Roland, we conclude there was sufficient evidence to send the punitive damages question to the jury. Again, the court does not decide whether Roland wins under the "clear and convincing" standard. Here, because there was some evidence that may support a jury verdict, punitive damages should go to the jury. See HRCP Rule 50(a)(1); Miyamoto, 104 Hawaiʻi at 7, 84 P.3d at 515.

We hold that there was sufficient evidence to instruct the jury on punitive damages. We affirm the ICA's judgment on this issue and remand for further proceedings.

## C. The ICA Wrongly Held that a Kinship Fiduciary Duty Exists

Hawaiʻi does not recognize a fiduciary duty based solely on kinship. We decline to do so now.

The closest Hawaiʻi has to a kinship fiduciary duty is a constructive trust based largely on the "confidential relationship" between family members. See Kam Oi Lee v. Fong Wong, 57 Haw. 137, 139, 552 P.2d 635, 637 (1976). That constructive trust, though, requires a promise to hold or convey property. See id. at 139-40, 552 P.2d at 637-38. Those facts don't exist in Roland and Robert's case.

Kam Oi Lee recognized that a confidential relationship may impose a fiduciary duty. Id. at 139, 552 P.2d at 637. The case involved a constructive trust between a father and his children. Id. They held interest in the same property as tenants in common. Id. at 138, 552 P.2d at 637. The children signed a quitclaim deed because the father promised he would sell the property and transfer the children's share of the proceeds to them. Id. However, the father left the property to his second wife when he passed away a year later. Id. at 138-39, 552 P.2d at 637. This court held that the children could recover under a constructive trust arising from an abuse of a confidential relationship. Id. at 142, 552 P.2d at 640.

"A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that [they] would be unjustly enriched if [they] were permitted to retain it." Id. at 139, 552 P.2d at 637. To apply an "'abuse of confidence' constructive trust," a

37

party had to show: "(1) a confidential relationship; (2) conveyance to the grantee based upon, and arising out of a confidential relationship; (3) a promise to hold for, or reconvey to, the grantor or a third person; and (4) a subsequent refusal to reconvey resulting in the grantee's unjust enrichment." Id. at 140, 552 P.2d at 638.

"Kinship, by itself, is not sufficient to establish a confidential relationship[,]" Kam Oi Lee explained. Id. "However, when parties are closely related, the imposition of great trust and the letting down of all guards is natural, and the relationship, coupled with evidence as to intrusting, the status of the parties as to health, age, education and dominance, may lead a court to find that a confidential relationship existed." Id. Because the father "exercise[d] influence and dominion over his children[,]" and the children trusted that their father would act in their best interests, there was a confidential relationship. Id. at 141, 552 P.2d at 639. Failure to sell the property and transfer the proceeds to the children constituted an abuse justifying imposition of a constructive trust. See id. at 142, 552 P.2d at 640.

The constructive trust in Kam Oi Lee that created a fiduciary duty to convey real property is not the same as the Guieb brothers' business partnership. The Guiebs were just two brothers who grew an automotive business together and grew apart

personally and professionally.  Before forming Guieb Inc., Robert leased space to perform automotive work, specifically exhaust systems.  Roland, at the time, worked in a restaurant.  As Robert's business flourished, he asked Roland if he wanted to join him and grow the business.

Our holding does not rule out unique situations that may create a fiduciary duty between relatives.  "Special circumstances" may give rise to a fiduciary duty, and include the degree of kinship between the parties, the disparity in age, education, and business experience, and the extent to which one party placed trust and confidence in the other.  See Autotech Tech. Ltd. P'ship v. Automationdirect.com, 471 F.3d 745, 749 (7th Cir. 2006).  We identified similar factors in Kam Oi Lee. 47 Haw. at 140, 552 P.2d at 638 ("health, age, education and dominance" may lead a court to find that confidential relationship exists).

Even if we considered those features, Roland and Robert's brotherly relationship does not approach the level of confidence and trust that would impose a separate fiduciary duty on Robert.

We decline to impose special fiduciary duties on siblings simply because they are siblings who do business together.  We affirm the circuit court's July 16, 2020 order granting Robert's MPSJ with respect to count 4.

**III.**

We affirm in part the ICA's September 6, 2024 Judgment on Appeal and remand count 12 to the circuit court for further proceedings consistent with this opinion.  We reverse in part the ICA's judgment and affirm the circuit court's July 16, 2020 order granting Robert's MPSJ with respect to count 4.

John D. Ferry III             /s/ Mark E. Recktenwald
(Bruce D. Voss and Michael C.
Carroll on the briefs)         /s/ Sabrina S. McKenna
for petitioners

                                      /s/ Todd W. Eddins

Fred Paul Benco
for respondent                    /s/ Lisa M. Ginoza

                                      /s/ Matthew J. Viola

